Steven L. IMLAY, et al.,
Petitioners, Appellants,

v.

CITY OF LAKE CRYSTAL d/b/a Lake Crystal Municipal Liquor Store, et al., Defendants and Third-Party Plaintiffs, Respondents,

v.

Vicki CARVER, Administrator of the Estate of Virgil H. Miller, Deceased, Third–Party Defendant,

State of Minnesota, Intervenor.

No. CX–88–2551.

Supreme Court of Minnesota.

March 30, 1990.

Mary C. Cade, David J. Moskal, Schwebel, Goetz & Seiben, Minneapolis, John M. Riedy, McLean Peterson Law Firm, Mankato, for appellants.

Lindsay G. Arthur, Jr., Katherine L. MacKinnon, Arthur, Chapman & McDonough, Minneapolis, for respondents.

Hubert H. Humphrey, III, P. Kenneth Kohnstamm, Atty. General's Office, St. Paul, for intervenor.

POPOVICH, Chief Justice.

Appellants brought a personal injury action against respondent city, in its capacity as operator of a liquor store, for injuries sustained in a collision with an uninsured, intoxicated motorcyclist who was served alcoholic beverages by respondent while obviously intoxicated. Respondent city filed a third-party action against the motorcyclist's estate. The jury found respondent city 20% at fault and the motorcyclist 80%, and returned a verdict for appellants for over $2.2 million. The trial court reduced this amount by certain collateral source payments appellants received and pursuant to a statutory limit on municipal joint and several liability. A Minnesota Court of Appeals panel affirmed the constitutionality of both the joint liability cap and the collateral source statute and each of their applications, but reversed and remanded on the calculation of interest. *Imlay v. City of Lake Crystal*, 444 N.W.2d 594, 598–602 (Minn.App.1989). We affirm in part, reverse in part, and remand.

I.

The undisputed facts are that on June 16, 1984, appellants Steven and Theresa Imlay sustained serious injuries when their motorcycle was struck by an uninsured, intoxicated motorcyclist, Virgil Miller, who crossed into their lane on a rural county road. Miller, who was killed in the collision, was served alcoholic beverages by the City of Lake Crystal, doing business as the Lake Crystal Municipal Liquor Store, shortly before the collision.

Steven Imlay's injuries included amputation of his left leg below the knee, a fractured pelvis, a ruptured spleen, a collapsed lung, and other internal injuries. In addition, his left arm, left shoulder, and vocal cord are paralyzed. Theresa Imlay suffered a fractured pelvis, soft tissue and tendon damage to her left knee and ankle, and a left wrist injury.

The Imlays brought a personal injury action against respondent city on January 21, 1985, under the Minnesota Liquor Act. Minn.Stat. § 340A.801 et seq. (1986). The city then brought a third-party action against Miller's estate. Prior to trial, the Imlays received $703,326.79 in benefits from Milwaukee Guardian Insurance, Inc. ("Milwaukee") to compensate them for the fault of the uninsured motorist. Appellants also received $192,370.20 for their medical expenses from their health insurer, State Farm Insurance Company, and $50,-000.00 from Tri–State Insurance Company.

The jury found respondent city illegally sold alcohol to Miller when he was obviously intoxicated, and this illegal sale and Miller's negligence combined to cause appellants' injuries, with 20% of the fault apportioned to respondent city and 80% to Miller. Steven Imlay, who was driving appellants' motorcycle, was attributed no fault. The jury set damages at $1,601,212.00 for Steven Imlay and $600,000.00 for Theresa Imlay, which included damages for pain, disability, disfigurement, emotional distress, medical expenses, property damage, loss of earnings, and loss of consortium, to the date of trial and thereafter.

In response to numerous post-trial motions, the trial court held Minn.Stat. § 604.02, subd. 1 (1986), did not violate equal protection and respondent's purchase of liability insurance did not waive these limits on joint and several liability. The court found all the insurance payments constituted collateral sources under Minn. Stat. § 548.36 (1986), but only deducted from the total verdict the $703,326.79 in uninsured motorist benefits to which no subrogation right was asserted. Pursuant to Minn.Stat. § 604.02, subd. 1, the court assigned respondent city responsibility for 40% of the remaining judgment. As a result of the collateral source deduction and the limit on municipal joint and several liability, appellants were awarded a judgment of $599,154.08, plus costs, disbursements, and interest, against respondent. The court also found Miller's blood alcohol

test results were properly admitted, and thus respondent's motion for a new trial was denied.

After appellants appealed, the attorney general's motion to intervene to defend the constitutionality of the challenged statutes was granted. A court of appeals panel affirmed the trial court on all grounds, except it held no pre-verdict interest was available and thus remanded for calculation of post-verdict interest; in addition, it upheld the constitutionality of the collateral source statute. *Imlay,* 444 N.W.2d at 598–602. We granted appellants' petition for further review.[1]

### II.

*Issues*

1) Whether either Minn.Stat. §§ 604.02, subd. 1, or 548.36 (1986) violates the equal protection clauses of the United States and Minnesota Constitutions.

2) Whether a municipality's purchase of liability insurance constitutes a waiver of the limitation on liability provided by Minn. Stat. § 604.02, subd. 1 (1986).

3) Whether the lower courts properly deducted collateral source payments from the verdict pursuant to Minn.Stat. § 548.36 (1986).

4) Whether pre-verdict interest is properly due appellants from respondent.

### III.

■ Appellants challenge the constitutionality of Minn.Stat. §§ 604.02, subd. 1, and 548.36 (1986), arguing both statutes violate the equal protection clauses of the United States and Minnesota Constitutions. "This court exercises the power to declare a statute unconstitutional only when absolutely necessary," *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 788 (1989), because statutes are presumed constitutional until the challenging party proves otherwise beyond a reasonable doubt. *Hick-*

*man v. Group Health Plan, Inc.,* 396 N.W.2d 10, 13 (Minn.1986). It is also presumed "[t]he legislature does not intend to violate the constitution." Minn.Stat. § 645.17(3) (1988). The parties agree the rational basis test applies to the challenges under both the federal and state equal protection clauses. *See Bernthal v. City of St. Paul,* 376 N.W.2d 422, 424 (Minn.1985). We have adopted a two-part inquiry for determining whether a statute meets the rational basis test:

1. Does the challenged legislation have a legitimate purpose? and

2. Was it reasonable for the lawmakers to believe that use of the challenged classification would promote that purpose?

*Lienhard v. State,* 431 N.W.2d 861, 866–67 (Minn.1988) (citing *Bernthal,* 376 N.W.2d at 425).

#### A. *Minn.Stat. § 604.02, subd. 1*

■ Appellants argue Minn.Stat. § 604.02, subd. 1 (1986), is unconstitutional as applied to municipal liquor vendors because no legitimate purpose exists for distinguishing between municipal and private vendors in this context. Section 604.02, subdivision 1 (1986), provides:

> When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award. * * * If the state or a municipality as defined in section 466.01 is jointly liable, and its fault is less than 35 percent, it is jointly and severally liable for an amount no greater than twice the amount of fault.[2]

Of the total $2,201,212.00 verdict awarded to the Imlays, the jury apportioned 20% fault to respondent city. After finding Minn.Stat. § 604.02, subd. 1, constitutional, the trial court applied this provision at the city's request to cap the city's joint and

---

1. Respondent city has not asked us to review the court of appeals' affirmance of the trial court on the issue of the admission of Miller's blood alcohol test results.

2. As appellants point out, the statutory language quoted by the court of appeals panel is the 1988 version and is incorrect, although the difference is inconsequential to its decision. *Imlay,* 444 N.W.2d at 597.

several liability at 40%,[3] which the court of appeals panel affirmed. *Imlay,* 444 N.W.2d at 598. We concur.

The court of appeals panel held "protect[ing] municipalities from higher insurance rates and judgment awards," as well as promoting municipal fiscal stability, is section 604.02's legitimate purpose. *Imlay,* 444 N.W.2d at 598. The legislative history suggests such purposes were envisioned when the statute was enacted. *E.g.,* Hearing on H.F. 1776, H.Jud.Comm., 74th Minn.Leg., Feb. 25, 1986 (audio tape) (comments of Rep. Olsen); Sen. debate on S.F. 2078, 74th Minn.Leg., March 18, 1986 (audio tape) (comments of Sen. Knaak). Appellants concede these reasons exist for the statute in general, yet maintain such purposes are legitimate "only where the activity protected is a public service." They further assert "[w]hen functioning as a vendor of intoxicating beverages, a municipality is not providing a public service and is no different than a private liquor vendor," so that no rational basis exists for such a distinction regarding joint and several liability.

Appellants' "public service" rationale, in effect, would entail a resurrection of the "governmental-proprietary" distinction originally created by the judiciary to avoid the harsh results of sovereign immunity, *see Spanel v. Mounds View School District No. 621,* 264 Minn. 279, 292, 118 N.W.2d 795, 803 (1962), but later abolished by the legislature. Minn.Stat. §§ 3.736, subd. 1 (state), and 466.02 (municipalities) (1988). The court of appeals panel considered and rejected this argument, holding "[s]ection 604.02 was enacted to protect municipalities from large judgments by placing a cap on their liability. Making distinctions between governmental and proprietary functions does not further that purpose." *Imlay,* 444 N.W.2d at 598; *see also Garcia v. San Antonio Metro. Transit. Auth.,* 469 U.S. 528, 545, 105 S.Ct. 1005, 1015, 83 L.Ed.2d 1016 (1985) ("notion of a 'uniquely' governmental function is

unmanageable"); *Indian Towing Co. v. United States,* 350 U.S. 61, 65, 76 S.Ct. 122, 124, 100 L.Ed. 48 (1955) (rejecting "the 'non-governmental'-'governmental' quagmire"). Because we do not wish to reinstate this troublesome dichotomy, we simply agree with the court of appeals panel.

The trial court determined another legitimate reason for limiting liability is "[t]o allow municipalities to give the public better control over the distribution and use of potentially dangerous alcoholic beverages. * * * This limitation allows the municipality to meet the limits of this restricted liability and still remain in operation in the public interest and for the public welfare." While appellants maintain a municipality sells alcohol for the exclusive purpose of reaping a profit, we contrarily noted that municipal ownership of liquor establishments is an outgrowth of the government's "police power * * * to protect and to promote the public health, safety, morals, and welfare." *Stabs v. City of Tower,* 229 Minn. 552, 559, 40 N.W.2d 362, 367 (1949) (licensing and bond requirements necessary for private ownership held inapplicable to municipal liquor vendors).

Although appellants did not address the second prong of the rational basis test, both the trial court and the court of appeals panel determined the legislature reasonably could have believed limiting the joint and several liability of municipal but not private liquor vendors would serve the purposes of section 604.02, subdivision 1, by shielding municipalities from costly awards and unavailable or unaffordable insurance. Respondent-intervenor state asserts section 604.02 "is in accord with nationwide trends" limiting governmental tort liability. Respondent city notes tort reform legislation has been passed in 41 states "in direct response to the national insurance crisis." Thus, our legislature reasonably could have believed enacting section 604.02, subd. 1, could alleviate the insurance crisis facing municipalities. The

---

**3.** We question the applicability of joint and several liability under these pleadings because the Imlays did not sue Miller; rather his estate was brought in by the city as a third-party defendant. Because the parties have proceeded on the assumption that Minn.Stat. § 604.02, subd. 1, does apply, however, we treat it as such.

statute also clearly eases the financial burdens municipalities experience, as demonstrated by the reduction of respondent city's liability from approximately $2.2 million to less than $900,000.

We conclude section 604.02, subdivision 1, does not violate equal protection guarantees under our *Bernthal* analysis. We also note that modified governmental joint and several liability has been found constitutional in other states. *E.g., Evangelatos v. Superior Court,* 44 Cal.3d 1188, 1205, 753 P.2d 585, 595, 246 Cal.Rptr. 629, 639 (1988). Analogously, monetary caps on governmental tort liability have withstood constitutional scrutiny both in this state, *Snyder,* 441 N.W.2d at 789 (municipality); *Lienhard,* 431 N.W.2d at 866 (state), and in other jurisdictions, *e.g., Sambs v. City of Brookfield,* 97 Wis.2d 356, 378, 293 N.W.2d 504, 515 (1980) (municipality), *cert. denied,* 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980); *Estate of Cargill v. City of Rochester,* 119 N.H. 661, 669, 406 A.2d 704, 709 (1979) (municipality), *appeal dismissed,* 445 U.S. 921, 100 S.Ct. 1304, 63 L.Ed.2d 754 (1980).

### B. *Minn.Stat. § 548.36*

■ We next address whether the collateral source statute, Minn.Stat. § 548.36 (1986),[4] violates the equal protection clauses of the United States and Minnesota Constitutions. Even though this challenge was not raised by appellants at the trial court level, the court of appeals panel ruled on this constitutional issue in the interests of justice. *Imlay,* 444 N.W.2d at 600. We also address this issue because we have not previously ruled on the constitutionality of Minn.Stat. § 548.36. *See* Minn.R.Civ. App.P. 103.04.

The common law collateral source rule provided that payment for some of the plaintiff's personal injury costs by a source other than the defendant could not be used to reduce the plaintiff's damage award against the defendant. *Hueper v. Goodrich,* 314 N.W.2d 828, 830 (Minn.1982); D. Dobbs, *Handbook on the Law of Remedies* § 8.10, at 581 (1973); *Restatement (Second) of Torts* § 920A (1979). This rule was criticized as granting plaintiffs a windfall or double recovery. *E.g.,* D. Dobbs, *supra,* at 584; 2 F. Harper & F. James, *The Law of Torts* § 25.22, at 1348 (1956). Collateral source statutes, such as adopted by Minnesota in 1986, abrogate a plaintiff's common law right to be over-compensated and now prevent double recoveries in many circumstances by requiring the deduction from the verdict of certain benefits received by a plaintiff.

With this background, we first examine whether the challenged statute has a legitimate purpose. It is generally agreed, as appellants concede, the primary goal of section 548.36 is to prevent double recoveries by plaintiffs, which is a legitimate purpose. *Johnson v. Consolidated Freightways, Inc.,* 420 N.W.2d 608, 614 (Minn.1988). By

---

4. Minn.Stat. § 548.36 (1986) provides, in relevant part:

Subdivision 1. **Definition.** For purposes of this section, "collateral sources" means payments related to the injury or disability in question made to the plaintiff, or on the plaintiff's behalf up to the date of the verdict, by or pursuant to:

\* \* \* \* \* \*

(2) health, accident and sickness, or automobile accident insurance or liability insurance that provides health benefits or income disability coverage; except life insurance benefits available to the plaintiff, whether purchased by the plaintiff or provided by others, payments made pursuant to the United States Social Security Act, or pension payments;

\* \* \* \* \* \*

Subd. 2. **Motion.** In a civil action, \* \* \* when liability \* \* \* is determined by the trier of fact, and when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral sources. If the motion is filed, the parties shall submit written evidence of, and the court shall determine:

(1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses except those for which a subrogation right has been asserted;

\* \* \* \* \* \*

Subd. 3. **Duties of the court.** (a) The court shall reduce the award by the amounts determined under subdivision 2, clause (1) \* \* \*.

preventing double recoveries, the collateral source statute also should reduce tort liability insurance premiums, D. Dobbs, *supra*, at 585, 587, which is one of the primary goals of tort reform and a legitimate objective. *Johnson v. Farmers Union Central Exchange, Inc.*, 414 N.W.2d 425, 431 (Minn.App.1987), *pet. for rev. denied* (Minn., Nov. 24, 1987).

The second prong of the rational basis test requires us to determine whether it was reasonable for lawmakers to believe the challenged classification would promote the statute's legitimate purpose. *Lienhard*, 431 N.W.2d at 867. Appellants contend Minn.Stat. § 548.36 fails this prong because its purpose is not furthered when the deductions represent the fault of an uninsured co-tortfeasor while the plaintiff is not fully compensated. Virtually any plaintiff can contend that he or she would be better off had a defendant been better insured, but such distinctions are necessarily made throughout insurance and tort law. Appellants also argue that as long as they are not fully compensated it is a windfall for the tortfeasers. The windfall argument generally is considered baseless, because diminished liability is not really a windfall, respondent city already has more liability than its proportionate fault, and fault and cost have little relation to each other. D. Dobbs, *supra*, at 586–87.

In examining equal protection challenges our focus is on the lawmakers' reasonable belief, which appellants fail to address, not on whether all the statute's purposes are fully satisfied in every conceivable scenario. Section 548.36 generally does promote the statute's stated purposes—preventing double recoveries and lowering municipality insurance premiums—thus it was reasonable for the legislature to believe these purposes would be promoted. We find Minn.Stat. § 548.36 constitutional under the rational basis standard, because the section clearly has legitimate purposes, which the legislature could reasonably have believed were being promoted.

### IV.

Respondent city purchased liability insurance with a policy limit of $1,300,000.00, as authorized by Minn.Stat. § 466.06 (1986), which provides:

> The governing body of any municipality may procure insurance against liability of the municipality and its officers, employees, and agents for damages resulting from its torts and those of its officers, employees, and agents, including torts specified in section 466.03 for which the municipality is immune from liability. The insurance may provide protection in excess of the limit of liability imposed by section 466.04. * * * The procurement of such insurance constitutes a waiver of the defense of governmental immunity to the extent of the liability stated in the policy but has no effect on the liability of the municipality beyond the coverage so provided.

Appellants argue the city's purchase of liability insurance waived its section 604.02 joint and several liability limit up to the policy amount. The trial court disagreed, as did the court of appeals panel. *Imlay*, 444 N.W.2d at 599. We concur.

The court of appeals panel initially held the section 466.06 waiver provision did not even apply to the case, *Imlay*, 444 N.W.2d at 599, based on Minn.Stat. § 466.15 (1988), which provides chapter 466 "do[es] not *modify* section 340A.801." (Emphasis added). Section 340A.801 of the Liquor Act, under which appellants brought suit, establishes a right of action for damages resulting from intoxication of a person who was illegally sold alcohol. The panel's interpretation is contrary to the plain meaning of "modify" as "alter," "change," "limit" or "extend." *E.g., Black's Law Dictionary* 905 (5th ed. 1979); *Webster's New International Dictionary* 1577 (2d ed. 1960). Statutory terms generally should be construed according to their plain and ordinary meaning. Minn.Stat. § 645.16 (1988). Thus, on its face chapter 466 applies to but does not alter actions brought under the Liquor Act.

We have interpreted a municipality's procurement of liability insurance under the plain meaning of section 466.06 to result in a waiver of the defense of governmental immunity to the extent of the policy

amount. *See Chabot v. City of Sauk Rapids,* 422 N.W.2d 708, 711 (Minn.1988); *Cairl v. State,* 323 N.W.2d 20, 26–27 (Minn. 1982). Neither party, however, claims respondent city was immune from liability. Rather, appellants urge us to extend the waiver provision to include a municipality's section 604.02 joint and several liability limits. As support, appellants cite *Nelson v. House,* 402 N.W.2d 639, 641–42 (Minn.App. 1987), *pet. for rev. denied* (Minn., May 18, 1987), where a court of appeals panel stated: "Section 466.06 [1986] governs waiver of those benefits of immunity that are still preserved, whether they constitute total immunity or a limit on liability." The *Nelson* panel reasoned section 466.06 "specifically mentions both section 466.03 immunities and 466.04 limits of liability [and concluded e]ach situation is equally affected by the statute." *Id.* at 642. The panel here, however, held "by its language, Minn. Stat. § 466.06 applies *exclusively* to waivers of immunities conferred by Minn.Stat. § 466.03 (1986)," citing *Nelson. Imlay,* 444 N.W.2d at 594 (emphasis added). While this interpretation is inconsistent with *Nelson,* we nevertheless agree respondent city here did not waive its section 604.02 joint and several liability limits by procuring insurance.

When the legislature amended section 466.06 in 1987, it specifically distinguished between section 466.04 limits (monetary caps) that may be waived and section 466.-03 immunities that may not. Although the 1987 amendment is not directly applicable to this case, *see* Minn.Stat. §§ 645.21 (no retroactive effect unless clearly intended) and 645.02 (unless specified, effective date is August 1) (1988), it is illustrative of legislative intent regarding the waiver provision. The 1987 amendment changed section 466.06 as follows:

> The procurement of such insurance constitutes a waiver of the ~~defense~~ *limits* of governmental ~~immunity~~ *liability under section 466.04* to the extent of the liability stated in the policy but has no effect on the liability of the municipality beyond the coverage so provided. *Procurement of commercial insurance * * * shall not constitute a waiver of any of the immunities conferred under section 466.03.*

Act of May 27, 1987, ch. 260, § 1, 1987 Minn.Laws 997, 998. Importantly, the legislature could have but did not include section 604.02 limits in this waiver provision. Indeed, nowhere in either the 1986 version or the 1987 amendment is section 604.02 mentioned. Thus, while we believe it makes sense that a municipality should not be protected from joint and several liability when it purchases liability insurance, we are constrained to reach this result because of clear statutory language.

## V.

### A. Collateral Sources

■ In determining whether the trial court and the court of appeals panel properly deducted collateral source payments from the verdict pursuant to Minn.Stat. § 548.36, we must first determine which payments to appellants were collateral sources under Minn.Stat. § 548.36, subd. 1. Prior to trial, the Imlays received $703,-326.79 in uninsured motorist benefits from Milwaukee, $192,370.20 from State Farm, and $50,000.00 from Tri–State. The trial court found all these payments constituted collateral sources under Minn.Stat. § 548.36, which the court of appeals did not disturb. *Imlay,* 444 N.W.2d at 600. Appellants do not deny their State Farm and Tri–State payments are collateral source benefits.

The parties dispute whether uninsured motorist benefits are a collateral source. Several types of payments to a plaintiff are specifically listed as "collateral sources," such as:

> health, accident and sickness, or automobile accident insurance or liability insurance that provides health benefits or income disability coverage.

Minn.Stat. § 548.36, subd. 1(2). Automobile accident insurance clearly is covered by the statute and thus uninsured motorist benefits are a collateral source. *Johnson v. Consolidated Freightways,* 420 N.W.2d at 614 & n. 2. It is unclear, however, whether the rest of subdivision 1(2) limits

automobile insurance or simply lists other types of collateral sources. Appellants contend the subpart is one type of collateral source and should be read as "automobile accident insurance which 'provides health benefits or income disability coverage.'" Conversely, respondent city asserts this subpart names four distinct types of collateral sources, one of which is "automobile accident insurance."

Minn.Stat. § 548.36, subd. 1(2), is poorly written, ambiguous, and could conceivably be read as providing for one, two, three or four different types of collateral source benefits. Since there are grammatical and analytical problems with each of the possibilities, the legislature may wish to reexamine this subsection to clarify its intentions.

### B. *Subrogation Rights*

Although collateral source payments are to be deducted from a plaintiff's award, Minn.Stat. § 548.36, subd. 2(1), excepts from deduction those benefits for which a subrogation right has been asserted. *See Buck v. Schneider*, 413 N.W.2d 569, 571–72 (Minn.App.1987) (assertion of subrogation right to workers' compensation benefits prevents collateral source deduction). Because the primary purpose of this statute is to prevent double recoveries, no deduction is allowed where subrogation rights are asserted "to ensure that the amount of collateral sources deducted from the award is the amount to which the plaintiff is actually entitled, and does not include amounts plaintiff must ultimately pay over to a subrogee." *Id.* at 572. Both Tri–State and State Farm have asserted their subrogation rights, thus these payments cannot be deducted from the verdict as collateral sources.

The parties dispute whether subrogation rights to the uninsured motorist benefits were assigned to and asserted by appellants. Before trial, apellants and Milwaukee entered in a settlement agreement and release, which provided in part:

11. *Subrogation Right of Insurer.* Claimants *assign* to the Insurer their right of action against the driver or owner of the uninsured motorcycle, and

grant the Insurer the full right of subrogation, including the right at anytime to bring an action in their name, by an attorney of its choice, against the driver or owner of the uninsured motorcycle. The Insurer shall pay all costs and expenses and retain all sums recovered. In addition, *the Insurer will waive any and all rights of subrogation arising under the policy or pursuant to law against the City of Lake Crystal or its municipal liquor store.*

(Emphasis added). We feel this language is unambiguous and therefore must be given its plain meaning. *Carl Bolander & Sons Inc. v. United Stockyards Corp.*, 298 Minn. 428, 433, 215 N.W.2d 473, 476 (1974). Appellants attempted to introduce testimonial evidence as to the meaning of the highlighted sentence and to its and Milwaukee's intent, but where contract language is unambiguous no parol evidence should be admitted. *Klawitter v. Straumann*, 255 N.W.2d 407, 411 (Minn.1977).

Appellants contend the emphasized sentence assigns them Milwaukee's subrogation rights against respondent city. Generally, subrogation rights are either "asserted" or "waived." *See Buck*, 413 N.W.2d at 571. Appellants and their insurer used the word "waive," which has a clear meaning in these circumstances. In fact, there would be no subrogation right against respondent city—only against the third-party defendant—for the uninsured motorist benefits because the city was not the uninsured motorist. Not only do the unambiguous terms of the settlement agreement state the subrogation right against respondent to the uninsured motorist benefits was waived, but there would be no subrogation right here against respondent city in the first place.

### C. *Method of Deduction of Collateral Sources*

Since we determined only the uninsured motorist benefits are collateral sources to which no subrogation rights were asserted, it is then necessary to examine when and if these collateral sources payments should be deducted from appellants' recovery

against respondent city. The trial court deducted the uninsured motorist benefits from the total jury verdict before reducing to 40% the judgment against respondent city. The court of appeals panel affirmed, holding the collateral source should be deducted first from the total verdict because "[a]ll defendants in cases with more than one defendant are entitled to the benefit of a section 548.36 deduction." *Imlay,* 444 N.W.2d at 601. Neither respondent nor appellants agree with the method of calculation used by the trial court and the court of appeals panel. There is no caselaw construing this question, and no language in either the collateral source (section 548.36) or the joint and several liability (section 604.02) statutes indicates to us which deduction should be applied first and from what amount this deduction should be made.

Respondent city asserts the total judgment of over $2.2 million first should be apportioned pursuant to Minn.Stat. § 604.02, with 40% to respondent, and then *all* the uninsured motorist benefits should be credited to it. This result would leave respondent with less than $200,000 of liability and is properly rejected. Its analogy to no-fault insurance cases is not applicable since there is no comparative fault by the plaintiffs here. In addition, it is inequitable for one party to receive the entire benefit of collateral source deduction. If Miller's estate was not insolvent and had it been sued by appellants, respondent could not even make the argument that it should receive the *entire* collateral source deduction, since Miller would be proportionately entitled to the collateral source deductions.

■ Appellants argue the uninsured motorist benefits should not be deducted from the judgment against respondent city because they would not be getting a double recovery. We agree with appellants' approach to this issue. Since the primary purpose of section 548.36 is to avoid double recoveries, we feel its application in favor of respondent city when appellants are undercompensated is not justified. We also believe the uninsured motorist benefits should be applied first to the obligation of the uninsured motorist, third-party defendant Miller, before being deducted from respondent city's obligation. Taking collateral sources off the top of the jury verdict is justified if there are co-defendants who are liquid, but it is not equitable to give a single defendant the benefit of collateral source payments when there would be no double recovery and when the payments result from a source the plaintiffs did not even sue. A plaintiff's award can be reduced as required by the collateral source statute, and yet this reduction should not be used to benefit a single liquid defendant until it is shown the plaintiff would be receiving a double recovery. In this case, the uninsured motorist benefits of $703,-326.79 first should be deducted from the uncompensated portion of the award, which is over $1.2 million. This would bring appellants' recovery from all sources to over $1.8 million, still less than the $2.2 million jury verdict. We do not believe the legislature would pass a statute that primarily is aimed at eliminating double recoveries, but then have it applied to reduce awards where there is no possibility of a double recovery. *See* Minn.Stat. § 645.17(1) (1988) (absurd result).

## VI.

■ Lastly, we address whether pre-verdict interest is properly due appellants from respondent city. A prevailing party can receive pre-verdict interest only if the amount of its offer is closer to the verdict than the amount of the opposing party's offer. Minn.Stat. § 549.09, subd. 1(b) (1988). Respondent city does not dispute that appellants, as prevailing parties at trial, could be entitled to an award under this section. The trial court awarded appellants pre-verdict interest against respondent starting January 21, 1985 (the date the lawsuit was filed) to June 3, 1988 (the date of the jury verdict), on the sum of $150,-018.65. This amount was reached after deduction of collateral source benefits allocated to past damages from the actual past damages, and then reduction of that amount to 40%. Both parties contend the trial court erred in its interest calculation.

The court of appeals panel adopted respondent's position and, relying on *Lienhard*, 431 N.W.2d at 861, which was issued after the trial court decision, reversed the award of pre-verdict interest and remanded for the award of only post-verdict interest. *Imlay*, 444 N.W.2d 601. *Lienhard* held that because pre-verdict interest is an element of damages awarded to compensate a plaintiff, pre-verdict interest is subject to the limits on compensatory damages against the State of Minnesota set by Minn. Stat. § 3.736, subd. 4 (1978). 431 N.W.2d at 865. Since the judgment had already reached the $100,000 statutory cap, pre-verdict interest could not be assessed when it would be an additional compensatory sum pushing the state's total liability over the cap. *Id.*

The question is whether the reasoning of *Lienhard* under Minn.Stat. § 3.736 is applicable to the liability limit set by Minn.Stat. § 604.02, subd. 1. Appellants contend *Lienhard* should not apply because the issue was only whether pre-verdict interest was subject to monetary caps, whereas this case involves a percentage of fault limitation. We agree with appellants that *Lienhard* should be limited to monetary caps and not applied when the only cap is a percentage of fault limit. If *Lienhard* were applied to proportionate fault cases there might never be pre-verdict interest awarded because it would push a defendant's total liability over its proportion of the verdict. We do not believe the legislature intended a result that would virtually eliminate pre-verdict interest in proportionate fault cases.

The trial court awarded pre-verdict interest, but did so on an amount after applying the joint and several liability limits and making the collateral source deductions. Awarding pre-verdict interest on only respondent city's share of the judgment was correct. Minn.Stat. § 549.09, subd. 1(b). Since we hold the trial court and the court of appeals panel were mistaken in making the collateral source deduction, we therefore must remand to the trial court for the award of pre-verdict interest against respondent city for the above period on 40% of the jury's verdict.

The trial court awarded post-verdict interest from June 3, 1988, to September 27, 1988 (the date of entry of judgment). Minn.Stat. § 549.09, subd. 1(a) (1988). Under *Lienhard*, because post-verdict interest is not compensation for the injury but "compensation for the loss of use of money," it is not subject to statutory limitations on municipal liability. 431 N.W.2d at 865–66. Because the trial court's interest award did not provide separate figures for pre- and post-verdict interest, the court of appeals panel remanded for apportionment of the post-verdict part of the total interest award. We hold the trial court's award of both pre- and post-verdict interest was proper, however, but must remand for pre-verdict interest on the increased judgment against respondent city.

Affirmed in part, reversed in part, and remanded.