Dennis CASPER, Respondent,

v.

CITY OF STACY, Appellant.

No. C4-90-2352.

Court of Appeals of Minnesota.

July 30, 1991.

Review Denied Sept. 25, 1991.

Howard S. Carp, and Richard G. Spicer, Watson & Carp, P.A., Minneapolis, for respondent.

Peter E. Lind, Foster, Waldeck, Lind & Gries, Ltd., Minneapolis, for appellant.

Considered and decided by FORSBERG, P.J., and CRIPPEN and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Respondent Dennis Casper brought a dram shop action against appellant City of Stacy (City) claiming the City illegally sold liquor to Karen Nerdahl, thereby causing an accident in which Nerdahl's car struck and injured Casper. The jury found that Casper, the City and Nerdahl acted negligently and caused Casper damages of $410,000. The trial court entered judgment against the City for $306,000 plus prejudgment interest, costs and disbursements. The City argues the court should have applied the statutory liability limit for municipalities and failed to sufficiently reduce the verdict for Casper's contributory negligence. We affirm.

## FACTS

On the evening of July 19, 1986, Nerdahl and Casper went to the Stacy Municipal Liquor Store and Bar, where Nerdahl consumed approximately ten mixed drinks between 9:00 p.m. and 1:00 a.m. Nerdahl's car struck Casper as he was walking on the road, fracturing his legs and causing a closed head injury which affected his memory. Casper received $30,000 in uninsured motorist coverage and $20,000 in wage loss from his no-fault insurer.

By special verdict the jury attributed 15% of the fault for the accident to Casper, 55% to the City, and 30% to Nerdahl, who was not a party to the action. The jury found $106,000 damages for past wage loss, $103,000 for past pain and suffering, and $201,000 for future pain, suffering, and diminished earnings.

The City had available liability insurance coverage of $364,631. The court concluded the City had waived statutory municipal liability limits by purchasing the insurance. The court deducted from the jury verdict the insurance proceeds Casper had collected and then determined Casper's comparative negligence as follows:

| | |
|---|---:|
| Jury Award | $410,000 |
| Less Collateral Sources | – 50,000 |
| (Casper's insurance proceeds) | |
| Net | 360,000 |
| Less Casper's 15% Negligence | – 54,000 |
| The City's Liability | $306,000 |

## ISSUES

1. By purchasing liability insurance, did the City waive its municipal liability limit under Minn.Stat. § 466.06 (1986)?

2. Should the trial court have determined the dollar value of Casper's negligence based on the entire jury award rather than on the jury award less collateral sources?

## ANALYSIS

The issues raised are questions of law for this court to resolve without deference to the trial court. *See Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 483 (Minn.1985).

## I.

Under Minn.Stat. § 466.04, subd. 1(1) (1986) a municipality's liability to any individual claimant shall not exceed $200,-000 in any case not arising out of the release of hazardous substances. Minn. Stat. § 466.06 (1986) provides:

> The governing body of any municipality may procure insurance against liability * * * for damages * * * resulting from its torts * * *. The insurance may provide protection in excess of the limit of liability imposed by section 466.04. * * * The procurement of such insurance constitutes a waiver of the defense of governmental immunity to the extent of the liability stated in the policy but has no effect on the liability of the municipality beyond the coverage so provided.

*Id.*

The City contends the waiver provision of Minn.Stat. § 466.06 applies only to the complete defense of governmental immunity for the specific claims listed in Minn. Stat. § 466.03 (1986), not to the liability of Minn.Stat. § 466.04. We disagree.

When the Minnesota legislature subjected municipalities to tort liability, it also created a number of exceptions to that liability in Minn.Stat. § 466.03. Finding a continued need for full immunity for certain claims, the legislature listed those claims in section 466.03. Where immunity was abolished, limits on liability were imposed by section 466.04. The City urges the following interpretation of the waiver provisions of section 466.06: (1) for section 466.03 claims, a municipality's purchase of insurance would result both in a loss of immunity and in liability in excess of the section 466.04 liability limits to the full extent of insurance coverage; (2) however, section 466.04 nonimmunity claims would be limited to the statutory limits, despite the availability of greater amounts of insurance coverage. We find this interpretation incongruous. *See Krumm v. R.A. Nadeau Co.*, 276 N.W.2d 641, 643 (Minn.1979) (courts presume "legislature does not intend an unreasonable result"); Minn.Stat. § 645.17 (1986).

A careful reading of Minn.Stat. § 466.06 leads us to conclude that its waiver provision applies to the liability limits of Minn. Stat. § 466.04. After authorizing the purchase of liability insurance, section 466.06 specifically allows the purchase of insurance to exceed the limits of section 466.04 (liability limits). We conclude the legislature did not authorize the expenditure of public funds for the purchase of liability insurance in excess of the liability limits of section 466.04 and at the same time not allow recovery beyond those limits. Such a result would be unreasonable. *See* Minn. Stat. § 645.17 (1986). Additionally, the referenced waiver operates "to the extent of the limits stated in the policy" but has "no effect on the liability" *beyond* coverage of insurance. Implicit in this language is that the insurance will have an effect *within* the coverage; that is, beyond the liability limits to the extent of insurance coverage. Finally, the statute references the purchase "of such insurance" as constituting waiver to the extent of policy limits. The language "such insurance" in our view logically refers to the insurance previously referenced. The only previously referenced in-

surance provision is in conjunction with section 466.04 (liability limits).

Our interpretation is consistent with previous construction of section 466.06:

> Section 466.06 governs waiver of those benefits of immunity that are still preserved, whether they constitute total immunity [under section 466.03] or a limit on liability [under section 466.04].

*Nelson v. House*, 402 N.W.2d 639, 641–42 (Minn.App.1987), *pet. for rev. denied* (Minn. May 18, 1987).

Additionally, the supreme court construed the 1986 statute by looking to its 1987 amendment:

> When the legislature amended section 466.06 in 1987, it specifically distinguished between section 466.04 limits (monetary caps) that may be waived and section 466.03 immunities that may not.

*Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 333 (Minn.1990). In *Imlay*, the court found the amendment "illustrative of legislative intent" on the waiver provision. *Id.* Similarly, we conclude that the 1987 amendment established that section 466.03 immunities could not be waived, and clarified that the liability limits of section 466.04 were waived by the purchase of liability insurance beyond the liability limits.

We conclude, therefore, that the City waived its section 466.04 liability limits by purchasing insurance in excess of those limits as authorized by section 466.06.

## II.

The City argues the trial court improperly allowed Casper a double recovery by deducting collateral sources from the jury verdict before computing Casper's fault allocation. The City cites for support this court's decision in *LeBaron v. Hanson*, 374 N.W.2d 197 (Minn.App.1985) *pet. for rev. denied* (Minn. Nov. 18, 1985), which followed *Parr v. Cloutier*, 297 N.W.2d 138 (Minn.1980).

The plaintiffs in *Parr* brought a negligence action to recover damages incurred in an automobile collision. The jury found that both parties acted negligently and caused the damages, although plaintiffs were less negligent than defendants. Consistent with its interpretation of the Minnesota No–Fault Act, Minn.Stat. § 65B.51, subd. 1 (1978), as requiring allocation of fault to precede subtraction of collateral sources, the court subtracted all of plaintiffs' insurance proceeds from defendant's share of the damages. *Parr*, 297 N.W.2d at 140. The court held that subtracting collateral sources before allocating fault

> would appear to frustrate one of the purposes of the Minnesota No–Fault Automobile Insurance Act, *i.e.* the coordination of benefits to avoid duplicate recovery.

*Id.* This court in *LeBaron* simply cited *Parr* to reach the same result. *LeBaron*, 374 N.W.2d at 199. Neither court explained how the alternate approach led to a double recovery.

The supreme court later explained the coordination of benefits under the No–Fault Act differently, without specifically overruling *Parr*:

> The offset provision [of section 65B.51] * * * should not operate until plaintiff has been fully compensated. * * * We do not think the offset provision should operate as a penalty, but rather should operate only to the extent necessary to preclude duplicate recovery.

*Tuenge v. Konetski*, 320 N.W.2d 420, 421–22 (Minn.1982).

Here, Casper brought a dram shop action, not a negligence action, so the collateral source calculations are governed by section 548.36, subdivisions 2 and 3(a) (1988), rather than by section 65B.51, subdivision 1, which the court applied in *Parr* and *LeBaron*. Minn.Stat. § 548.36, subds. 2 & 3(a) (1988) provides that in civil actions, "[t]he court shall reduce the *award* by the amounts" obtained from collateral sources. (Emphasis added.) Minn.Stat. § 65B.51, subd. 1 (1988), in contrast, states "there shall be deducted from any *recovery* the value of" collateral sources. (Emphasis added.) The *Parr* court held that reference to "recovery" legislative intent that amount of the judgment should be reduced by collateral sources. *Parr*, 297 N.W.2d at 140. Here, however, the reference to "award" in section 548.36 contemplates a

reduction from the jury verdict rather than the judgment.

The appellate courts of Minnesota have not determined whether the deduction under section 548.36 should be taken before or after computation of contributory fault mandated by Minn.Stat. § 604.01, subd. 1 (1988). However, in *Imlay* the supreme court held that the collateral source deduction under section 548.36 should precede apportionment of fault among several defendants under Minn.Stat. § 604.02 (1986). *Imlay*, 453 N.W.2d at 335.

A senate-appointed commission to study injury compensation recommended addition of the following provision to section 548.36, subd. 3:

> (c) In any case where the claimant is found to be at fault under section 604.01, the reduction required under paragraph (a) shall be made before the claimant's damages are reduced under section 604.-01, subdivision 1.

Minnesota Injury Compensation Study Commission, *Report to the Legislature* at 37–38 (Jan.1990) in Senate Judiciary Committee Minutes, Feb. 21, 1990. The Minnesota Legislature adopted the amendment in 1990. 1990 Minn.Laws ch. 555, § 14. Thus, for all cases arising after the amendment was enacted, the court must first deduct collateral sources, and then determine the contributory fault allocation, as the trial court did in this case.

In recommending the amendment, the commission stated:

> To follow the Court's decision in *Parr* does more than prevent a double recovery of economic loss; it permits an invasion and undue recognition of damages that are not covered by the No–Fault Act. In some cases it may completely preclude tort recovery, despite the fact that the plaintiff is less at fault than the defendant.
>
>     \*     \*     \*     \*     \*     \*
>
> The same potential problem exists in cases involving the collateral source statute, Section 548.36. \* \* \* To avoid the *Parr* problem, the Commission recommends that section 548.36, subdivision 3 be amended.

Minnesota Injury Compensation Study Commission, *Report to the Legislature* at 37–38 (Jan. 1990) in Senate Judiciary Committee Minutes, Feb. 21, 1990.

The legislative history of the amendment indicates that the legislature intended to clarify the meaning of section 548.36, rather than change the application of that section, because at the time of the amendment the courts had not applied *Parr* to calculations of liability under section 548.36. In light of this clear expression of legislative intent, we will not extend the reasoning of *Parr* to section 548.36. The trial court properly deducted collateral sources under section 548.36 before computing the fault allocation under section 604.01.

■ Casper further contends that collateral sources should not have been deducted from the jury verdict at all because this is a dram shop action. The cases Casper cites construe the No–Fault Act, Minn.Stat. § 65B.51, subd. 1 (1986), which applies only to negligence actions. *See, e.g., Ketterling v. Spud Bar, Inc.,* 398 N.W.2d 599, 601 (Minn.App.1986) *pet. for rev. denied* (Minn. Feb. 18, 1987). The collateral source deduction for this case is governed by section 548.36, which requires collateral source deductions in any "civil action, whether based on contract or tort." Minn.Stat. § 548.36, subd. 2 (1986). The trial court properly deducted collateral sources in this case. *See Imlay,* 453 N.W.2d at 333–35.

### DECISION

The City waived the liability limits of Minn.Stat. § 466.04 by purchasing insurance in excess of those limits. The trial court properly deducted collateral sources under Minn.Stat. § 548.36 before allocating fault between the parties.

Affirmed.