**Sheelagh F. RUSSELL, Respondent,**

v.

**Sharif HAJI–ALI, Appellant.**

**No. A12–1213.**

Court of Appeals of Minnesota.

Jan. 14, 2013.

Review Denied March 27, 2013.

---

Jeffrey S. Storms, Robert Bennett, Gaskins, Bennett, Birrell, Schupp, Minneapolis, MN, for respondent.

Roger H. Gross, Allison M. Lange Garrison, Gislason & Hunter, LLP, Minneapolis, MN, for appellant.

Considered and decided by SCHELLHAS, Presiding Judge; ROSS, Judge; and RODENBERG, Judge.

## OPINION

RODENBERG, Judge.

In this personal-injury appeal, appellant-defendant argues that the district court erred in determining that underinsured-motorist (UIM) benefits paid to respon-dent-plaintiff prior to trial in the direct action do not constitute a collateral source that reduces the award of damages under Minn.Stat. § 548.251. We hold in this case of first impression that, under the plain language of the collateral-source statute, and in accordance with the supreme court's decision in *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 331 (Minn.1990), UIM benefits received before the verdict in a direct tort action constitute a collateral source that must, on motion, be applied to reduce the judgment. We reverse and remand.

## FACTS

The facts underlying this appeal are not in dispute. Appellant Sharif Haji–Ali ran a red light in downtown Minneapolis in March 2010, colliding with a vehicle driven by respondent Sheelagh F. Russell. Respondent sustained multiple injuries.

In January 2011, respondent sued appellant, seeking damages in excess of $50,000. Appellant's liability insurer undertook appellant's defense, denying that respondent's damages were equal to or greater than appellant's $50,000 liability limit. Respondent's UIM insurer intervened in the action in April 2011. Respondent had incurred approximately $43,000 in past medical expenses by the time the parties and the UIM carrier mediated in October 2011. During mediation, respondent reached a settlement with her own insurer and was paid $50,000 in exchange for a release of her potential UIM claims. The insurer did not retain any subrogation rights.

Respondent's tort claims against appellant were tried to a jury in February 2012. By special verdict, the jury found that appellant was negligent, that his negligence was a direct cause of the motor vehicle accident, and that respondent was not negligent. The jury found damages totaling $102,974.

Appellant filed a posttrial motion to reduce the award pursuant to Minn.Stat. § 548.251. He sought a reduction by reason of two separate and prior payments made to respondent: (1) the no-fault benefits respondent received in the amount of $40,097, and (2) respondent's UIM settlement with her insurer in the amount of $50,000. The district court granted the motion with regard to the no-fault payments and reduced the judgment accordingly. That determination is not at issue. The district court also concluded that the UIM settlement did not constitute a collateral-source payment under Minn.Stat. § 548.251. It therefore declined to reduce the judgment by the amount of the UIM settlement.

This appeal followed.

## ISSUE

Did the district court err in determining that UIM benefits, obtained through a pretrial settlement with the injured claimant's insurer, are not a collateral-source payment requiring a reduction of the award under Minn.Stat. § 548.251?

## ANALYSIS

Appellant argues that the district court erred as a matter of law in determining that the UIM settlement does not constitute a collateral-source payment under Minn.Stat. § 548.251, subd. 1(2). Appellant contends that UIM coverage is a form of "automobile accident insurance" within the meaning of the statute, and that the district court therefore erred in failing to reduce the judgment by the amount of the settlement. *Id.*

When the underlying facts are not in dispute, as in this case, we review the district court's application of the law de novo. *Do v. Am. Fam. Mut. Ins. Co.,* 779 N.W.2d 853, 856 (Minn.2010). Questions of statutory application and interpretation

are likewise subject to de novo review. *S. Minn. Mun. Power Agency v. Boyne,* 578 N.W.2d 362, 364 (Minn.1998).

To apply the collateral-source statute, it is helpful to consider its effect against the backdrop of the relevant common law. The common-law collateral-source rule provided that "payment for some of the plaintiff's personal injury costs by a source other than the defendant [may] not be used to reduce the plaintiff's damage award against the defendant." *Imlay,* 453 N.W.2d at 331. This rule allowed injured claimants to recover damages from a tortfeasor even when the claimant received a double recovery as a result of having previously received payment from a collateral source. *Do,* 779 N.W.2d at 857–58.

In 1986, the Minnesota legislature partially abrogated the common-law rule by adopting Minn.Stat. § 548.251, the collateral-source statute. *Imlay,* 453 N.W.2d at 331; *Do,* 779 N.W.2d at 857. This statute requires courts, upon timely motion, to reduce a civil judgment by "amounts of collateral sources that have been paid for the benefit of the plaintiff." Minn.Stat. § 548.251, subds. 2(2), 3. The statute defines "collateral sources" as "payments related to the injury or disability in question made to the plaintiff . . . up to the date of the verdict, by or pursuant to: . . . health, accident and sickness, or *automobile accident insurance* or liability insurance that provides health benefits or income disability coverage." *Id.,* subd. 1 (emphasis added).

The collateral-source statute enumerates specific sources that, on motion, operate to reduce the judgment. For all other collateral sources, the common-law rule continues to apply, and those sources do not result in a reduction of the judgment. *Smith v. Am. States Ins. Co.,* 586 N.W.2d 784, 786 (Minn.App.1998), *review*

*denied* (Minn. Feb. 18, 1999).[1] At issue in this case is whether "automobile accident insurance," as enumerated in the collateral-source statute, includes UIM benefits.

When interpreting a statute, our primary goal is to effectuate the intent of the legislature. *Auto Owners Ins. Co. v. Perry*, 749 N.W.2d 324, 326 (Minn.2008). Courts generally construe statutory words and phrases according to their plain and ordinary meaning, in light of the surrounding context. *Am. Fam. Ins. Grp. v. Schroedl*, 616 N.W.2d 273, 277–78 (Minn. 2000). Only if a statute is ambiguous—that is, subject to more than one reasonable interpretation—may courts look beyond the statutory text to determine legislative intent. *Wynkoop v. Carpenter*, 574 N.W.2d 422, 425 (Minn.1998).

Here, the statute requires courts to reduce a damages award in a personal-injury case by the amount of any payments that are defined as collateral sources in the statute. Minn.Stat. § 548.251, subd. 3(a). The statute plainly provides that "automobile accident insurance" payments "related to the injury or disability in question made to the plaintiff … up to the date of the verdict" constitute a statutory collateral source. *Id.*, subd. 1. As UIM benefits are a form of "automobile accident insurance" payments "related to the injury or disability in question," and as the payments in this case were made to respondent prior to the verdict, the UIM benefits here are a collateral source under the plain language of the statute.

Respondent relies on *Imlay* to argue that the statute is ambiguous with regard to the term "automobile accident insurance." In *Imlay*, the supreme court held that uninsured motorist (UM) benefits "are a collateral source" under the statute.[2] 453 N.W.2d at 333. The supreme court noted that the statutory text was unclear as to whether it applied to "automobile accident insurance" in a broad sense, or only to "automobile accident insurance … that provides health benefits or income disability coverage." Minn.Stat. § 548.251, subd. 1(2); *see Imlay*, 453 N.W.2d at 333–34. In this context, the supreme court observed that the statutory text was "poorly written, ambiguous, and could conceivably be read as providing for one, two, three or four different types of collateral source benefits." *Imlay*, 453 N.W.2d at 334. The supreme court invited the legislature to "reexamine this subsection to clarify its intentions."[3] *Id.*

The supreme court's observation in *Imlay* regarding the grammatical deficiencies of the statute did not inform its holding, and it therefore constitutes dictum. The supreme court did not look beyond the statutory text to determine legislative in-

1. For example, under the common-law rule, collateral sources include gifts from third parties and family members. *See Swanson v. Brewster*, 784 N.W.2d 264, 278 (Minn.2010). By excluding such gifts from the definition of "collateral sources" under the statute, the legislature intended the common-law rule to continue to apply to such gifts, meaning that judgments will not be reduced by those amounts. *See id.*

2. "Uninsured motorist coverage" is defined by statute as "coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury from owners or operators of *uninsured* motor vehicles and hit-and-run motor vehicles." Minn.Stat. § 65B.43, subd. 18 (2012) (emphasis added). "Underinsured motorist coverage" is statutorily defined as "coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury from owners or operators of *underinsured* motor vehicles." *Id.*, subd. 19 (2012) (emphasis added).

3. Despite the supreme court's invitation to do so, the legislature has not amended section 548.251 since *Imlay*.

tent. To the contrary, it relied on the plain language regarding "automobile accident insurance" to conclude that UM benefits are a collateral source. *See id.* at 333–34. *Imlay's* holding is that "[a]utomobile accident insurance clearly is covered by the statute and thus uninsured motorist benefits are a collateral source." *Id.* at 333.

The supreme court's holding in *Imlay* mandates the same outcome with regard to UIM benefits. The statute does not limit the phrase "automobile accident insurance" to exclude UIM coverage. The term "automobile accident insurance" encompasses both UM and UIM benefits, as both constitute insurance coverages applicable to automobile accidents. Interpreted in light of *Imlay*, the statute requires a deduction from the verdict of all automobile accident insurance benefits paid prior to the verdict.

Respondent argues that the distinctions between UM and UIM coverage suffice to distinguish this case from *Imlay* and require the latter to be excluded from the definition of "collateral sources" under the statute. But respondent has not articulated any meaningful distinction between the two forms of coverage to warrant such differential treatment. Both coverages provide first-party benefits to an injured claimant when the tortfeasor's insurance is either insufficient or nonexistent. *See* Minn.Stat. § 65B.43, subds. 18–19 (2012) (defining both types of coverage). Both UM and UIM claims are contractual in nature and distinct from the tort action. *See Miklas v. Parrott,* 684 N.W.2d 458, 460–61 (Minn.2004) (noting that the statute of limitations for contracts, rather than

torts, applies to both UM and UIM claims). And both coverages are fundamentally tied to the tortfeasor's fault. *See* Minn.Stat. § 65B.43, subds. 18–19 (providing that both forms of coverage apply only when the claimant is "legally entitled to recover damages for bodily injury from owners or operators" of uninsured or underinsured motor vehicles). After liability is established, if the damages exceed the tortfeasor's liability insurance limits, "the excess is payable by the [plaintiff's] underinsurance carrier to the extent of its coverage." *Dean v. Am. Fam. Mut. Ins. Co.,* 535 N.W.2d 342, 344 (Minn.1995). UIM coverage thus serves the same basic purpose as UM coverage: both coverages stand as a proxy for the coverage of the uninsured or underinsured motorist, and both unquestionably constitute forms of "automobile accident insurance."

We are mindful that, in practice, the timing of payment as between the two coverages may differ. A claimant may generally obtain UM benefits (subject to subrogation rights) without first suing the uninsured tortfeasor.[4] *See, e.g., State Farm Mut. Auto. Ins. Co. v. Galloway,* 373 N.W.2d 301, 304 (Minn.1985) (noting that injured claimants commonly collect UM benefits, subject to the insurer's subrogation rights, before commencing an action against the uninsured motorist). In contrast, because UIM coverage depends upon the tortfeasor's liability insurance being insufficient to cover a claimant's damages, a UIM claim does not mature until *after* liability and damages have been established. *See, e.g., Emps. Mut. Cos. v. Nordstrom,* 495 N.W.2d 855, 858 (Minn. 1993) (holding that an injured claimant

4. We observe that, if respondent's insurer had retained subrogation rights in this case, the payments would have been expressly excluded from the collateral-source statute. *See* Minn.Stat. § 548.251, subd. 2(1) (excluding

from collateral-source reduction those payments "for which a subrogation right has been asserted"). It is undisputed that no subrogation rights were reserved.

may not compel arbitration of UIM coverage until after the tortfeasor's liability and damages have been determined).

Additionally, because UIM benefits are generally not paid until after the tort action has been tried, UIM benefits are not a collateral source in the usual case. *See* Minn.Stat. § 548.251, subd. 1 (defining "collateral sources" to include only payments made "up to the date of the verdict"); *Smith*, 586 N.W.2d at 786 (holding that the collateral-source statute requires a reduction of the judgment only for payments made prior to the verdict). In the normal course, a UIM claimant is limited to recovery of those items of damages not covered by the tortfeasor's liability insurance. *See Nordstrom*, 495 N.W.2d at 858. As the amount of UIM benefits properly payable is based on the verdict or other recovery from the tortfeasor, a claimant in such situations usually recovers only the damages sustained in excess of the tortfeasor's liability insurance (and up to the contractual UIM limit) with no resulting possibility of any double recovery. *See id.*

In this case, if respondent had refrained from presenting or settling her UIM claim until after the verdict, the UIM benefits would not be a collateral-source payment under the statute. *See* Minn.Stat. § 548.251, subd. 1 (defining "collateral sources" to include only payments made "up to the date of the verdict"). By electing to settle the UIM claims *before* liability or damages had been determined, respondent brought those payments within the scope of the statute, essentially converting what would in the typical case have been excess coverage into a collateral-source payment. *See id.* Her decision to settle the UIM claim prior to the verdict triggered the broad statutory definition of "automobile accident insurance" as a collateral source. *Id.*

Respondent argues that UIM benefits are akin to payments from the tortfeasor's liability insurance, which do not constitute collateral sources. Respondent relies on *Do*, a case in which the supreme court held that "a payment made by a tortfeasor's automobile insurer is not a collateral source" under section 548.251. 779 N.W.2d at 855. The supreme court observed that the ordinary meaning of "collateral source" refers to a source "wholly independent of" and unconnected with the tortfeasor, and held that payments made to an injured claimant by the tortfeasor's liability insurer constitute a *direct* rather than a collateral source because they derive directly from the tortfeasor's insurance. *See id.* at 859–60; *see also Dean*, 535 N.W.2d at 345 (holding that payments from a tortfeasor's insurer are not from a collateral source because they stem directly from the tortfeasor). As a result, they do not constitute collateral-source payments under the plain meaning of the statute. *See Do*, 779 N.W.2d at 859–60. In this case, by contrast, the UIM benefits were paid by respondent's insurer. They were not direct-source payments. *Do* is therefore inapposite.[5]

---

**5.** The district court found "persuasive [respondent's] assertion regarding the distinction between UM and UIM coverage," noting that "this case is more similar to a plaintiff who pursues a claim for *no-fault benefits* against his or her insurer and a claim against the tortfeasor than to a plaintiff who pursues a *claim for UM benefits* and a claim against the tortfeasor." (Italics in original.) Respondent does not advance this argument on appeal, presumably because no-fault benefits paid prior to the verdict in the direct action are unquestionably offset against the verdict. Even prior to the enactment of the collateral-source statute, Minnesota law required deduction from a plaintiff's recovery of basic economic loss (no-fault) benefits "paid or payable." Minn.Stat. § 65B.51, subd. 1 (2012); *see Wertish v. Salvhus*, 558 N.W.2d 258 (Minn.1997).

Respondent argues that, because statutes in derogation of the common law must be strictly construed, the collateral-source statute should be interpreted to exclude UIM coverage unless it expressly provides otherwise. *See Do*, 779 N.W.2d at 858 (recognizing that statutes in derogation of common law must be strictly construed). In another case addressing the interpretation of the collateral-source statute, the appellant raised a similar argument, contending that a broad interpretation of the statute was inappropriate. *See Swanson*, 784 N.W.2d at 279 (holding that the term "payments" in the collateral-source statute encompasses the value of a negotiated discount for medical services). The supreme court declined to adopt the proposed narrow interpretation because it was inconsistent with the plain language of the statute. *See id.* at 279–80. Courts "should not so narrowly construe statutes" as to undermine the legislature's intent. *Id.* at 280. Rather, statutory construction "must be sensible and in harmony with the statute's purpose." *Id.*

Here, the text of the statute plainly includes automobile accident insurance as a collateral source that must reduce the award when the claimant receives payments prior to the verdict. Respondent's argument—that UIM coverage does not constitute "automobile accident insurance" unless expressly provided—would strain the text far beyond its plain meaning.

Respondent also raises several policy arguments in support of the district court's interpretation. Because the plain language of the collateral-source statute encompasses UIM payments made prior to the verdict, we have no occasion to look beyond the text of the statute. *See Wynkoop*, 574 N.W.2d at 425 (recognizing that courts may look beyond the statutory text to determine legislative intent only when the statute is ambiguous). It is the role of

the legislature, not this court, to properly effectuate the policy concerns respondent references. *See Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn.App.1987) ("[T]he task of extending existing law falls to the supreme court or the legislature, but it does not fall to this court."), *review denied* (Minn. Dec. 18, 1987); *cf. Do*, 779 N.W.2d at 860 (noting that "the question of a potential windfall to the plaintiff" in a situation where the collateral-source statute does not apply is for the legislature to decide). If the legislature had intended to advance those policies by excluding preverdict UIM payments from the definition of collateral sources, it could have expressly so provided.

Even if we were to consider them, respondent's policy-related arguments would not necessarily mandate a different result. Respondent first contends that, since she paid premiums to obtain UIM coverage, appellant should not reap the benefits of those premiums through a reduction of the judgment against him. However, the collateral-source statute already takes those premiums into account. It provides that any collateral-source reduction in the judgment must be offset by the premiums the injured party paid in order to secure the right to the collateral-source benefit. *See* Minn.Stat. § 548.251, subds. 2(2), 3 (requiring courts to "offset any reduction in the award" by any "amounts that have been paid, contributed, or forfeited by . . . the plaintiff . . . for the two-year period immediately before the accrual of the action to secure the right to a collateral source benefit"). Because the collateral-source statute already provides an offset for insurance premiums, respondent's argument is unpersuasive. *Cf. Swanson*, 784 N.W.2d at 279 (rejecting a similar argument that certain insurance payments should not be treated as collateral sources under the statute because the plaintiff "had the foresight and prudence to secure

health insurance and he paid premiums for his policy," reasoning that the statute already provides an offset for premiums).

Respondent also argues that treating the UIM payments as collateral-source payments under the statute would result in a windfall to tortfeasors. The appropriate allocation of a potential windfall underlies both the common-law collateral-source rule and Minn.Stat. § 548.251, subd. 1(2). The common-law rule sought to prevent tortfeasors from obtaining windfalls due to the injured claimant's receipt of compensation from collateral sources. *See Do,* 779 N.W.2d at 858. Under the statute, by contrast, the evident concern is to preclude double recoveries by injured plaintiffs at the expense of defendants. *Imlay,* 453 N.W.2d at 331; *Buck v. Schneider,* 413 N.W.2d 569, 572 (Minn.App.1987) (recognizing that the collateral-source statute "has the apparent purpose of preventing windfalls by plaintiffs at the expense of the defendants"). By directly abrogating the common-law rule with regard to enumerated sources, the legislature sought to elevate other policies above the concern that tortfeasors might benefit from a reduction in the judgment by reason of the deduction from the verdict of payments previously received from collateral sources. *See Imlay,* 453 N.W.2d at 331–32 (discussing various legislative purposes underlying the statute).

Finally, respondent argues that treating UIM payments as collateral-source payments will discourage UIM insurers from settling claims prior to the verdict in the tort action. Although that may be the case, we presume that the legislature was aware of such consequences when it enacted the collateral-source statute. *See Swanson,* 784 N.W.2d at 279 (noting that the legislature was aware of the ramifications in enacting the collateral-source statute); *Van Asperen v. Darling Olds, Inc.,*

254 Minn. 62, 74, 93 N.W.2d 690, 698 (1958) ("[T]he legislature must be presumed to have understood the effect of its words and intended the entire statute to be effective and certain."). As noted above, it is the role of the legislature, not this court, to properly effectuate the policy concerns surrounding encouraging or discouraging settlements. *See Tereault,* 413 N.W.2d at 286; *cf. Do,* 779 N.W.2d at 860 (noting that "the question of a potential windfall to the plaintiff" in a situation where the collateral-source statute does not apply is for the legislature to decide). Furthermore, Minnesota caselaw has recognized that the purpose of UIM coverage is not to serve as primary insurance. Rather, it is intended to be excess coverage provided by contract to cover the insured against damages in excess of the tortfeasor's liability limits *after* the tortfeasor's liability has been determined. *See Nordstrom,* 495 N.W.2d at 858 (noting that UIM insurance should not be treated as primary coverage, but should only come into play if the damages exceed the tortfeasor's insurance limits). It is therefore questionable whether, as a matter of public policy, the legislature would seek to encourage settlement of UIM claims prior to the verdict when the tortfeasor's liability and damages are still uncertain. Regardless, these policy arguments are properly the concern of the legislature and not of this court. *See Tereault,* 413 N.W.2d at 286.

In sum, because respondent was paid UIM benefits before the verdict, that payment was a collateral-source payment under Minn.Stat. § 548.251, subd. 1. The district court erred in denying appellant's motion to reduce the jury award accordingly.

## DECISION

The plain language of the collateral-source statute requires, on motion, a re-

duction in the damages award for preverdict payments an injured claimant receives pursuant to "automobile accident insurance." Minn.Stat. § 548.251, subd. 1. Because UIM coverage is a form of automobile accident insurance, UIM benefits obtained through a pretrial settlement with the claimant's insurer must be applied to reduce the award by the amount of the UIM settlement.

**Reversed and remanded.**