**Rodney W. BUCK, et al., Appellants,**

v.

**Robert Allan SCHNEIDER, Respondent.**

**No. CX–87–725.**

Court of Appeals of Minnesota.

Oct. 13, 1987.

Duane M. Peterson, Winona, for appellants.

Jeffrey A. Hanson, Dunlap, Keith, Finseth, Berndt & Sandberg, P.A., Rochester, for respondent.

Heard, considered and decided by FOLEY, P.J., and PARKER and SEDGWICK, JJ.

## OPINION

SEDGWICK, Judge.

This appeal is from a judgment for appellants in their negligence action against respondent Robert Schneider. Appellant Rodney Buck settled his claim for workers' compensation benefits with his employer and the employer's insurer. As part of the settlement, the employer and insurer assigned Buck their subrogation rights to the benefits. Applying the recently-enacted "collateral source" statute, the trial court reduced Buck's damage award against respondent to reflect the amount of workers' compensation benefits he had received. Buck contends his assertion of the assigned subrogation rights bars the deduction of collateral sources under the statute. We agree.

## FACTS

In January 1980, Buck was injured while working at the White Water Tavern in Beaver, Minnesota, when Schneider crashed his pickup truck through the tavern's front wall. The tavern and its worker's compensation insurer, the Home Insurance Company (collectively, "employer/insurer") paid Buck certain workers' compensation benefits, but they disputed liability for further benefits.

On March 3, 1983, Buck and the employer/insurer signed an agreement settling Buck's claims for further benefits. Under the agreement, the employer/insurer paid Buck $12,000 and assigned to Buck any claim they might have to a subrogation interest under the workers' compensation statute. *See* Minn.Stat. § 176.061.

In January 1984, the Bucks brought this negligence action against Schneider. A jury awarded Rodney Buck damages as follows:

| | |
|---|---:|
| Past medical expenses | $4,165 |
| Past lost earnings | $10,000 |
| Past pain, disability and emotional distress | $4,500 |
| Future lost earning capacity | –0– |
| Future pain, disability and emotional distress | $3,500 |
| Total: | $22,165 |

(Ruth Buck was awarded $500 for past lost services and companionship.)

Minn.Stat. § 548.36 (1986), enacted in 1986, provides for the reduction of damage awards by the amount of certain "collateral sources" of compensation, *e.g.*, workers' compensation benefits, available to the plaintiff. In response to Schneider's motion for a determination of collateral sources, the trial court ordered the parties to submit evidence on this issue. *See* § 548.36, subd. 2. The trial court determined that Buck had received $18,897.80 in workers' compensation benefits (including the $12,000 settlement). The court subtracted from this sum $2,600 in attorney's fees Buck had paid to secure the collateral sources. *See* § 548.36, subds. 2(2), 3(a).

The trial court reasoned that, since the apparent purpose of the collateral source reduction is to prevent double recovery, the only portions of the verdict that should be

reduced are those representing compensation for damages covered by workers' compensation. It therefore only reduced Rodney's awards for past medical expenses and lost earnings, as follows:

| | | |
|---|---|---|
| | $14,165.00 | (portion of verdict to which collateral sources apply) |
| less | 18,897.80 | (amount of collateral sources received) |
| | (4,732.80) | |
| plus | 2,600.00 | (expenditures to secure collateral sources) |
| total | (2,132.80) | |

Buck was granted judgment of $8000, reflecting the portion of the award that was unaffected by the collateral source deduction. The Bucks appeal from the judgment, contending there should have been no reduction for collateral source payments.

## ISSUE

Did the trial court err by deducting Buck's workers' compensation benefits from his award of damages?

## ANALYSIS

The collateral source statute provides:

In a civil action, * * * when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may [move for a] determination of collateral sources. If the motion is filed, * * * the court shall determine:

(1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses *except those for which a subrogation right has been asserted;* and

(2) amounts that have been paid [by] the plaintiff * * * to secure the right to a collateral source benefit * * *.

Subd. 3. Duties of the court. (a) The court shall reduce the award by the amounts determined under subdivision 2, clause (1), and offset any reduction in the award by the amounts determined under subdivision 2, clause (2).

Minn.Stat. § 548.36, subds. 2, 3(a) (1986) (emphasis added). The statute defines "collateral sources" to include workers' compensation benefits. *Id.,* subd. 1(1).

Buck argues his workers' compensation benefits should not have been deducted from his damage award because the benefits fall within the exception for collateral sources "for which a subrogation right has been asserted." *Id.,* subd. 2(1). He argues he "asserted" the subrogation rights by stating, in response to the court's order requiring the parties to submit evidence of collateral sources, and in responses to discovery requests, that he had been assigned those rights. For example, his response to the trial court's collateral source order states:

As part of said settlement [of Buck's workers' compensation claim], the Home Insurance Company assigned the plaintiff any and all interest in any right of subrogation and agreed that any rights to subrogation or any independent action for any workers' compensation benefits paid to plaintiff are assigned to plaintiff in full.

Schneider argues that no subrogation right had been asserted because Buck's complaint asserts only direct claims for damages, not claims arising by subrogation.

■ We agree with Buck that he has asserted a subrogation right within the meaning of subdivision 2(1). The statute does not require the subrogation right to be asserted in any particular manner. It refers to "asserted" subrogation rights, we believe, to ensure that *waived* subrogation rights are not excepted from collateral source deductions.

Schneider also argues that Buck did not assert a subrogation right within the meaning of the statute, because, by definition, a person cannot be subrogated to his own rights. While this argument has some superficial appeal, we believe it misses the point. The real issue is whether subrogation rights that have been assigned back to the plaintiff should be excluded from the collateral source deduction, or whether such an assignment is ineffective. To re-

solve this issue, we look at the purpose of the statute.

The statute prevents plaintiffs from recovering damages to the extent compensation is available from collateral sources. It has the apparent purpose of preventing windfalls by plaintiffs at the expense of defendants. The apparent purpose of the subrogation exception is to ensure that the amount of collateral sources deducted from the award is the amount to which the plaintiff is actually entitled, and does not include amounts plaintiff must ultimately pay over to a subrogee.

Schneider argues that plaintiffs would receive windfalls if the subrogation exception applied to subrogation rights assigned back to them, because plaintiffs could routinely obtain such assignments for no, or greatly discounted, value.

Schneider has not explained, however, why subrogation rights would be discounted to little or no value in settlements between plaintiffs and workers' compensation employers/insurers. Subrogation rights are valuable to employer/insurers (and other potential subrogees under the workers' compensation statute), because they enable them to recover benefits they paid to employees. Plaintiffs, therefore, must ordinarily give up something of value for an assignment of subrogation rights.

For example, in this case the assignment occurred before the collateral source statute was enacted. Even without the statute, the assignment had value to Buck, because it would have allowed him to recover the full extent of his damages from Schneider, and to keep the full amount, including the benefits he had previously recovered from his employer. Buck contends he had to accept a lower cash settlement of his workers' compensation claim in exchange for the assignment; this is presumably true, since the subrogation rights were valuable to the employer/insurer. The assignment was therefore not a sham transaction, and giving effect to it under the statute does not result in a windfall to Buck.

Even assuming subrogation rights would be discounted when assigned to plaintiffs, any windfall is not at the expense of defendants. If there were no assignment, or an assignment to a third party, the subrogation exception would still apply (assuming the rights are asserted), and the defendant would still be required to pay the full damage award.

Schneider also makes this unrelated argument. He contends that Buck is really seeking an offset for the amount forfeited in securing the workers' compensation benefits, under Minn.Stat. § 548.36, subd. 2(2), and that Buck is not entitled to such an offset because he did not put in any evidence of the amount forfeited.

We see no reason, however, to treat Buck's claim as one for offset under subdivision 2(2), rather than as an asserted subrogation right under subdivision 2(1).

In light of our decision, we need not address Buck's constitutional challenges to the statute.

## DECISION

The judgment is reversed to the extent it reduces appellants' damages for collateral source benefits, and remanded for entry of judgment for appellants in the full amount of damages awarded by the jury.

Reversed in part and remanded.