**Carol E. KAHNKE, Appellant,**

v.

**Harvey GREEN, et al., Respondents.**

No. A04–1569.

Court of Appeals of Minnesota.

April 26, 2005.

Kevin P. Hickey, Anne C. Towey, Bassford Remele, P.A., Minneapolis, MN; and Jonathan E. Olson, Bloomington, MN, for appellant.

David A. Schooler, Carrie A. Daniel, Jennifer Daugherty, Larson King, LLP, St. Paul, MN, for respondents.

Considered and decided by HALBROOKS, Presiding Judge; TOUSSAINT, Chief Judge; and HUDSON, Judge.

## OPINION

HALBROOKS, Judge.

The district court reduced appellant's jury award pursuant to the collateral-source provisions of Minn.Stat. § 548.36 (2004). The district court included payments made to appellant by her health-care insurer in its collateral-source reduction, based on its determination that the insurer did not properly assert its subrogation rights. Because we conclude that the insurer's subrogation rights were reasonably and timely asserted, we reverse and remand for recalculation of the award.

## FACTS

In May 2001, appellant Carol E. Kahnke was involved in an automobile accident with respondents Courtney and Harvey Green. Kahnke's insurer, Medica, paid medical expenses for Kahnke in the amount of $16,088.16.[1] The case was tried to a jury, which found total damages of $114,874. With respect to liability, the jury found Kahnke and Courtney Green each 50% at fault for the accident.

The Greens subsequently filed a motion for determination of collateral sources pursuant to Minn.Stat. § 548.36 (2004). A

---

1. The jury found that "the reasonable value of medical supplies and hospital and medical expenses" incurred by Kahnke as a result of the accident was $37,274. The district court apparently adopted this amount as the amount paid by Medica on Kahnke's behalf. *See* Conclusions of Law and Order dated July 15, 2004 (stating that "Kahnke must deduct the $37,274 already paid by Medica for [Kahnke's] medical bills"). The Greens acknowledge that the district court's recitation in its order of the total amount of Medica's payments is in error and that the correct amount paid by Medica is $16,088.16.

hearing on the motion was held on April 27, 2004.[2] The Greens argued that the payments made on Kahnke's behalf by Medica should be included in the collateral-source computation because Medica failed to properly assert a subrogation claim in a timely manner. Kahnke contended that the subrogation claim was properly asserted and, therefore, Medica's payments on her behalf should not be included in the calculation of collateral-source payments.

The district court ruled in favor of the Greens, noting that "Medica failed to properly assert its subrogation right." Accordingly, the district court held that "Kahnke must deduct [from the jury award] the [$16,088.16] already paid by Medica for [her] medical bills." This appeal follows.

## ISSUE

Did the district court err in failing to exclude the payments made by Medica on Kahnke's behalf from the collateral-source deduction it made to the jury award?

## ANALYSIS

■ Kahnke argues that the district court erred in reducing the amount of the jury award by the amount of Kahnke's medical bills paid by Medica. Minnesota's collateral-source statute provides, in pertinent part:

Subd. 2. Motion. In a civil action, whether based on contract or tort, when liability is admitted or is determined by the trier of fact, and when damages include an award to compensate the plaintiff for losses available to the date of the verdict by collateral sources, a party may file a motion within ten days of the date of entry of the verdict requesting determination of collateral

sources. If the motion is filed, the parties shall submit written evidence of, and the court shall determine:

(1) amounts of collateral sources that have been paid for the benefit of the plaintiff or are otherwise available to the plaintiff as a result of losses *except those for which a subrogation right has been asserted;* and

(2) amounts that have been paid, contributed, or forfeited by, or on behalf of, the plaintiff or members of the plaintiff's immediate family for the two-year period immediately before the accrual of the action to secure the right to a collateral source benefit that the plaintiff is receiving as a result of losses.

Subd. 3. Duties of the court. (a) The court shall reduce the award by the amounts determined under subdivision 2, clause (1), and offset any reduction in the award by the amounts determined under subdivision 2, clause (2).

Minn.Stat. § 548.36, subds. 2, 3 (2004) (emphasis added). Where the relevant facts are not in dispute, the application of a statute presents a question of law subject to de novo review. *Schmuckler v. Creurer,* 585 N.W.2d 425, 427 (Minn.App.1998), *review denied* (Minn. Dec. 22, 1998).

The Greens contend that the district court correctly included the payments made by Medica in its collateral-source calculation because Medica failed to "timely assert and actually assert its subrogation interest." The Greens argue that Medica did not "assert" its subrogation interest until May 12, six weeks after the jury returned its verdict, when Medica notified them that it had retained counsel and was pursuing its subrogation rights. They further argue that Kahnke's "failure

**2.** The hearing was originally scheduled for April 14, 2004, however, counsel for Kahnke failed to appear. The hearing was resch-

uled at the district court's request, after Kahnke's counsel indicated that he had never received notice of the original hearing.

to mention any subrogation interest prior to trial and her six-week delay in actually raising Medica's interest post-verdict compels the conclusion that [Kahnke's] assertion of subrogation rights was improper and untimely."

The first question we must answer is whether the statute provides for the timing of the assertion of a subrogation right. There is no question that a collateral-source motion must be brought within ten days following entry of the verdict. Minn.Stat. § 548.36, subd. 2. But the statute is silent on when a right of subrogation must be asserted. Given the lack of specificity in the statute, we conclude that the timing of the assertion of a subrogation right must be reasonable. *Cf. State ex rel. Laurisch v. Pohl,* 214 Minn. 221, 228, 8 N.W.2d 227, 231 (1943) (noting that where a statute specifies no time for a public official to perform a duty, that duty must be performed within a reasonable time). The question then becomes whether Medica reasonably and timely asserted its subrogation claim.

In *Buck v. Schneider,* 413 N.W.2d 569 (Minn.App.1987), we concluded that Minn.Stat. § 548.36 "does not require the subrogation right to be asserted in any particular manner. [The statute] refers to 'asserted' subrogation rights, we believe, to ensure that *waived* subrogation rights are not excepted from collateral source deductions." *Id.* at 571 (emphasis in original). *Buck,* therefore, stands for the proposition that, for the purposes of the collateral-source statute, an asserted subrogation right is simply one that has not been waived. The issue thus becomes whether or not Medica waived its right to subrogation.

As the Wisconsin Supreme Court has noted, "[o]ne may waive subrogation explicitly in writing, or one may be held to have waived subrogation by conduct."

*Jindra v. Diederich Flooring,* 181 Wis.2d 579, 511 N.W.2d 855, 859 (1994). There is no evidence here that Medica waived subrogation in writing. We must therefore consider whether it may be deemed to have waived subrogation by conduct.

The Greens contend that Medica waived its right to subrogation because it did not provide timely notification of that right. The Greens argue that they had no notice of Medica's subrogation rights until they received a letter from Medica's counsel "formally asserting it" on May 12, 2004. But in an affidavit dated April 2, 2004, the Greens' trial counsel notes that "[u]pon information and belief, all of the plaintiff's medical bills which were not paid by her no-fault carrier were paid by Medica." He further notes that to his knowledge Medica "has never notified me of a right to recover its payments or otherwise asserted a subrogation claim in this matter." This indicates that the Greens were aware that Medica potentially had a subrogation claim for the payments it made on Kahnke's behalf. More importantly, the Greens acknowledge that the issue of subrogation was raised at the collateral-source hearing on April 27. In fact, Kahnke's attorney submitted an affidavit with an attached "notice that [he] received from an agent of Medica, asserting Medica's subrogation claim." There is no indication in the record that Medica's subrogation right was waived at this hearing. In addition, in her memorandum in opposition to the collateral-source motion hearing, dated May 11, Kahnke once again notified the Greens that Medica "asserted that it has a subrogation right that entitles it to recover its expenditures out of proceeds of [Kahnke] in the present case."

Where one has "actual knowledge of facts which would put one on further inquiry," notice may be implied.

*Anderson v. Graham Inv. Co.*, 263 N.W.2d 382, 384 (Minn.1978) (emphasis omitted). Here, at least by the time of the collateral-source hearing, the Greens had knowledge of the fact that Medica could assert its subrogation right and that this right had not been expressly waived. Thus, notice may be implied as of April 27, the date of the collateral-source hearing, at the latest.

The Greens suggest that Kahnke's "failure to mention any subrogation interest prior to trial" renders any subsequent assertion "improper and untimely." But this issue was addressed in *Buck*, where this court held that a subrogation claim was properly asserted despite the fact that it was first raised in response to the district court's collateral-source order. 413 N.W.2d at 571.

The Greens cite *Group Health, Inc. v. Heuer*, 499 N.W.2d 526, 529 (Minn.App. 1993), for the proposition that, for a subrogation right to be asserted, "actual notice" of the subrogation interest must be given. In that case, however, the issue was not what constituted asserting a subrogation right for purposes of Minn.Stat. § 548.36 (2004), but whether constructive notice of a subrogation interest was adequate to justify setting aside a settlement because the tortfeasor "willfully disregard[ed]" the subrogation rights of the insurer. *Group Health*, 499 N.W.2d at 529. The court in *Group Health* concluded that "*[i]n order to find willful disregard* of an insurer's subrogation interest, some intent to deceive or defraud must be present. Thus, the notice must be actual." *Id.* (emphasis added). *Group Health* is, therefore, inapposite to the question presented here.[3]

Even if actual notice was required, it is difficult to characterize Medica's assertion of its subrogation right as untimely. Subrogation is an equitable doctrine. *Id.* at 530. Accordingly, its application is governed by equitable principles. *See Commercial Union Ins. Co. v. Minn. Sch. Bd. Ass'n*, 600 N.W.2d 475, 478–79 (Minn. App.1999) (noting that "[b]ecause subrogation is equitable in origin, even when the right is contractual in nature, the terms of the subrogation are governed by equitable principles, unless the contract explicitly provides otherwise"), *review denied* (Minn. Dec. 21, 1999).

Here, the Greens do not suggest that there has been a violation of a statute of limitations, simply that the assertion is "untimely." Thus, they appear to be invoking the equitable concept of laches. While it is true that laches may be used to deny a remedy where no statute of limitations exists, *O'Mulcahey v. Gragg's Heirs (In re Gragg's Estate)*, 45 Minn. 112, 114–15, 47 N.W. 543, 543–44 (1890), it is generally to be applied only where injustice would otherwise result. *Ward v. Sherman*, 192 U.S. 168, 176–77, 24 S.Ct. 227, 230, 48 L.Ed. 391 (1904); *Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953).

> [L]aches is not, like limitation, a mere matter of time; but *principally a question of the inequity* of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or the parties.
>
> . . . .

---

**3.** It is instructive to note that the court in *Group Health* discussed whether a tortfeasor "must have *notice of the 'assertion* of a subrogation claim.'" 499 N.W.2d at 529 (emphasis added). This necessarily implies that the notice is *separate* from the assertion. As set forth in *Group Health,* "assertion" of a subrogation claim may occur before there is any notice. *See id.* at 529–30 (discussing what type of notice of an asserted subrogation claim is required to find willful disregard).

... [Laches may be applied] where a court of equity finds that the position of the parties has so changed that equitable relief cannot be afforded without doing injustice, or that the intervening rights of third persons may be destroyed or seriously impaired....

*Ward,* 192 U.S. at 177, 24 S.Ct. at 230 (emphasis added) (quotations omitted). Although evidence of prejudice is not "essential" for laches to apply, it is an important consideration in determining the reasonableness of a delay. *Aronovitch,* 238 Minn. at 242–43, 56 N.W.2d at 574.

The Greens have demonstrated no injustice, inequity, or prejudice that would result from the assertion of Medica's subrogation right. On the contrary, excluding the payments made by Medica from the collateral-source reduction actually serves the public policy that the statute seeks to promote. As the supreme court has noted, the collateral-source statute is designed to prevent double recovery by a plaintiff. *Imlay v. City of Lake Crystal,* 453 N.W.2d 326, 331 (Minn.1990). In *Buck,* we explained:

> It has the apparent purpose of preventing windfalls by plaintiffs at the expense of defendants. The apparent purpose of the subrogation exception is to *ensure that the amount of collateral sources deducted from the award is the amount to which the plaintiff is actually entitled, and does not include amounts plaintiff must ultimately pay over to a subrogee.*

413 N.W.2d at 572 (emphasis added). Because Medica has asserted its subrogation right, no double recovery will occur.

Here, the letter from Medica's counsel "formally asserting" Medica's subrogation right was received by the district court on May 12, well in advance of its ruling on the collateral-source issue. We conclude that such timing is reasonable. Thus, the district court erred in failing to exclude the payments made by Medica from the collateral-source reduction of the jury award.

## DECISION

Because Medica's subrogation claim was asserted in a reasonable and timely manner, the district court erred in failing to exclude the payments made by Medica on Kahnke's behalf from its collateral-source reduction. We therefore reverse and remand for recalculation of the collateral-source payments.

**Reversed and remanded.**