Curtis R. GRAFF, Respondent (A09–173), Appellant (A09–522),

v.

ROBERT M. SWENDRA AGENCY, INC., Appellant (A09–173), Respondent (A09–522).

Nos. A09–173, A09–522.

Court of Appeals of Minnesota.

Dec. 29, 2009.

Michael C. Van Berkom, Borkon, Ramstead, Mariani, Fishman & Carp, Ltd.; and Martin T. Montilino, The Law Office of Martin T. Montilino, Minneapolis, MN, for respondent/appellant Graff.

Terrence M. Gherty, Gherty & Gherty, S.C., Hudson, WI, for appellant/respondent Swendra Agency.

Considered and decided by SCHELLHAS, Presiding Judge; MINGE, Judge; and ROSS, Judge.

## OPINION

MINGE, Judge.

Insurance agent challenges the district court's award of damages to motorist for agent's negligent failure to procure added underinsured-motorist (UIM) coverage arguing that (1) motorist's settlement with and release of the insurer released agent as representative of the insurer; and (2) the district court did not properly apply the collateral-source statute. Minn.Stat. § 548.251 (2008). Motorist, in a consolidated cross-appeal, challenges the district court's application of the collateral-source rule to reduce the jury award. We affirm.

## FACTS

This case arises out of a dispute concerning the insurance coverage provided to Curtis Graff under an American Family Insurance Group policy procured by Robert M. Swendra Agency, Inc. Robert Swendra owned and operated the Swendra Agency and he, as an employee of the agency, discussed insurance coverage with Graff and arranged Graff's insurance.[1]

Before buying insurance coverage, Graff asserts that he talked with Swendra about purchasing a supplemental umbrella policy that included $1,000,000 of additional underinsured-motorist coverage. Graff testified that he decided to purchase the umbrella policy with the additional UIM coverage based on Swendra's representations as to the risks of lesser levels of such coverage and that Swendra represented that he would procure the umbrella policy with the additional UIM coverage for Graff.

Swendra denied that the conversations occurred or that he had any obligation to arrange for additional UIM coverage. American Family issued Graff an automobile policy and an umbrella policy on February 27, 2004, per Swendra's instructions. The automobile policy provided UIM coverage up to $100,000; the $1,000,000 umbrella policy excluded UIM coverage.

Subsequently, Graff was seriously injured in a work-related car accident with a motorist with modest liability coverage. That motorist's insurer paid Graff its policy limits. Graff demanded that the UIM coverage in his umbrella policy cover the balance of his damages, but American Family refused to pay any UIM benefits under the umbrella policy.

On May 18, 2006, Graff settled a permanent-partial disability claim with his employer and its workers' compensation carrier for a lump sum of $17,800. Graff paid attorney fees in the amount of $3,760 to secure this lump sum. Later that year, on December 13, Graff settled additional disability and related claims with his employer and its workers' compensation carrier for a lump sum of $67,500. Out of the $67,500, $7,500 was paid for attorney fees.

Graff sued Swendra and American Family in 2007. Before trial commenced in 2008, Graff entered into a *Pierringer* release[2] with American Family through

---

1. Graff sued both the Swendra Agency and Robert Swendra as an individual. Because it is immaterial to this appeal whether one analyzes the actions of the Swendra Agency or Swendra the individual, Swendra will be used throughout this opinion to refer to both.

2. A *Pierringer* release was recognized and approved by the Wisconsin Supreme Court in

which he released all claims he had against American Family arising from the car accident in exchange for $100,000. At oral argument, both parties represented that this $100,000 constituted payment of the policy limit of UIM coverage Graff had on his basic automobile policy. As part of the *Pierringer* release, Graff also agreed to indemnify American Family for claims made against it resulting from the accident. The release expressly provided that it had no effect on Graff's claims against Swendra. Because of the release, American Family was dismissed from the lawsuit.

After Swendra became aware of the release, he moved for dismissal of the lawsuit against him. Swendra argued that if the jury found that he had agreed to arrange the disputed coverage, American Family was contractually bound and that he (Swendra) could not be independently liable. The district court took the motion under advisement and a jury trial was held in May 2008, on Graff's negligence claim against Swendra.

At the close of the evidence, Swendra moved for a directed verdict. The district court again took the matter under advisement.

The jury found Swendra 90% negligent for not obtaining additional UIM insurance and awarded damages of $753,000 for past pain, disability, and emotional distress; for future pain, disability, and emotional distress; and for loss of future earning capacity. No claim was made and no damages were awarded for past wage loss or medical expenses. Swendra filed a motion for judgment as a matter of law (JMOL),[3] repeating his argument that he could not

be held individually liable because the jury verdict was tantamount to a determination that he bound coverage by American Family. The district court denied Swendra's motion for JMOL and effectively denied his prior and pending parallel motions.

The district court also issued a collateral-source order adjusting the damages. The court subtracted $200,260.29 as a collateral source from the total damages of $753,000 that the jury awarded. These reductions were: $30,000 from the other motorist's insurer, $100,000 from the American Family settlement, and $70,260.29 from the two workers' compensation settlements. This last figure represented the total of the two workers' compensation settlements, less attorney fees.

These appeals followed.

## ISSUES

I. Did Graff's release of all his claims against American Family also release Swendra from liability for negligent failure to procure insurance coverage for Graff?

II. Did the district court err in its calculation of the extent to which the lump-sum workers' compensation settlements are collateral sources that should be subtracted from the jury award?

III. Did the district court err when it offset from the workers' compensation settlements the attorney fees Graff paid to secure those settlements?

## ANALYSIS

### I. Swendra's Liability/American Family Release

The first issue concerns the effect of the American Family release on Swendra's lia-

---

*Pierringer v. Hoger,* 21 Wis.2d 182, 124 N.W.2d 106 (1963). The Minnesota Supreme Court has endorsed the use of *Pierringer* releases. *Frey v. Snelgrove,* 269 N.W.2d 918, 921–22 (Minn.1978).

**3.** Although Swendra labeled his motion as one for judgment notwithstanding the verdict, this label has been replaced with judgment as a matter of law. Minn. R. Civ. P. 50.02. This opinion follows the language of the rule and refers to Swendra's motion as one for JMOL.

bility. On appeal, Swendra does not contest the jury finding that he negligently failed to procure UIM umbrella coverage. Rather, Swendra argues that Graff's release of claims against American Family extinguished Graff's claims against Swendra because (1) the jury effectively found that Swendra contractually bound American Family to provide UIM coverage, and thus he cannot be separately liable to Graff; or alternatively, (2) the combination of the release and common law created a circular indemnity whereby Graff must indemnify American Family and American Family must indemnify Swendra. With respect to his second argument, Swendra claims that for each dollar he pays to Graff under the jury verdict, American Family must pay a dollar to Swendra, which in turn requires that Graff pay American Family a dollar. Swendra concludes that because everyone ends up with the same amount of money, this circular indemnity releases Swendra.

## A. Standard of Review

Whether Graff's release of claims against American Family extinguished Graff's claims against Swendra is a question of law, which we review de novo. *See Modrow v. JP Foodservice, Inc.*, 656 N.W.2d 389, 393 (Minn.2003) (applying de novo review to a lower court's decision on a question of law).

## B. Swendra's Liability for Negligence

■ Swendra argues that because the jury found him liable and because no party to the lawsuit disputed that he was an agent of American Family acting within the scope of his authority in dealing with Graff, a legally enforceable contract was created between American Family and Graff. *See, e.g., Morrison v. Swenson*, 274 Minn. 127, 142 N.W.2d 640, 645–47 (1966)

(holding that an agent's statement that the insurance policy had been reinstated bound the insurer). Swendra then reasons that the release of American Family eliminates the primarily liable party and therefore ends this lawsuit.

Swendra's argument assumes that in a failure-to-insure lawsuit, the insured's primary claim is against the insurer. This argument is inconsistent with the common law of agency which recognizes that agents can be held individually liable for torts they commit:

> An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent ... with actual or apparent authority.

*Restatement (Third) of Agency* § 7.01 (2006). This liability is based on an agent's conduct and is justified because persons are responsible for the legal consequences of the torts they commit. *Id.* cmt. b. The Restatement emphasizes that an agent's liability is unaffected by the possible liability of the principal:

> It is consistent with encouraging responsible conduct by individuals to impose individual liability on an agent for the agent's torts although the agent's conduct may also subject the principal to liability.
>
> ... It is ordinarily immaterial to an agent's liability that the agent's tortious conduct may, additionally, subject the principal to liability.

*Id.*

■ Consistent with this Restatement position, Minnesota courts have held that "an insurance agent may be held liable under a negligence theory for a failure to procure insurance." *Peterson v. Brown*, 457 N.W.2d 745, 749 (Minn.App.1990) (cit-

ing *Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 279 (Minn. 1985)), *review denied* (Minn. Aug. 23, 1990); *accord Johnson v. Farmers & Merchants State Bank*, 320 N.W.2d 892, 898 (Minn.1982). In such negligence actions, insureds "do not seek coverage under their policy, *but rather damages caused by the agent's negligent failure to procure insurance*," and courts analyze these claims under negligence principles. *Yule v. Iowa Nat'l Mut. Ins. Co.*, 390 N.W.2d 391, 393–94 (Minn.App.1986), *review denied* (Minn. Sept. 22, 1986). Swendra attempts to distinguish these cases by pointing out that they do not discuss whether the agent had binding authority, which is "the matter at issue here." But this argument misses the point of this line of cases: negligence actions by insureds against agents are not actions "seek[ing] coverage under their policy." *See Yule*, 390 N.W.2d at 393–94. Rather, they are separate actions based on the agent's tortious conduct and do not depend on the agent's status and binding authority.

Moreover, it is undisputed that the only issue tried was whether Swendra was *negligent* in failing to procure additional UIM coverage. Swendra vigorously contested at trial Graff's assertion that he had agreed to provide this coverage. Swendra could have chosen at the beginning of this dispute to admit that he agreed to provide the coverage, in which case American Family likely would have been contractually obligated to provide the additional UIM coverage. But he did not, and, as a consequence, contrary to Swendra's argument, there was never a factual determination that Swendra bound coverage and created a contract between American Family and Graff; that issue was not before the jury.[4] Thus, another fundamental premise of Swendra's argument—namely, that a legally enforceable contract for the additional UIM coverage existed between American Family and Graff because Swendra bound coverage—was not actually at issue and not established.

■ Finally, Graff's settlement with American Family and pursuit of a negligence action against Swendra does not result in inconsistent remedies. The injury and damages Graff claimed in his lawsuit stem from not having the additional $1,000,000 of UIM coverage in the umbrella policy. At trial, Graff did not claim any injury or damages based on the $100,000 UIM coverage that he had in his basic automobile policy with American Family. Indeed, the existence of this $100,000 in UIM coverage was not disputed at trial. But, as Swendra recognized at oral argument, the $100,000 payment Graff received in his settlement with American Family effectively represented payment for the $100,000 UIM coverage in that basic automobile policy, not payment of the disputed $1,000,000 UIM coverage in the umbrella policy. Having obtained this settlement money for the UIM benefits of the basic automobile policy, Graff did not seek coverage under either policy, but rather damages resulting from Swendra's alleged tort. Therefore, we conclude that Graff's settlement with American Family did not extinguish his negligence claim against Swendra for failing to procure insurance.[5]

4. Although on appeal Swendra urges that an agent's representations, if made, bind the principal, at trial Swendra disputed that he agreed to provide the additional UIM coverage. Swendra's trial position was tantamount to disputing that he bound coverage.

5. Our holding is consistent with a similar Wisconsin case—*Schurmann v. Neau*, 240 Wis.2d 719, 624 N.W.2d 157 (Wis.Ct.App. 2000). There, the court held that the plaintiff could sue the insurance agent for negligent failure to procure the requested insurance policy after the plaintiff settled with the insur-

## C. Circular Indemnity Argument

■ Swendra's circularity defense assumes that he has a right to indemnity from American Family. At common law, "[a] principal's duty to indemnify does not extend to losses that result from the agent's own negligence." Restatement (Third) of Agency § 8.14 cmt. b (2006). The Minnesota Supreme Court follows this rule: "[W]e know of no rule of law whereby, absent an express agreement to the contrary, a duty of indemnity is imposed upon a principal for losses incurred *due to the agent's fault.* Rather, the rule is that such a duty does not exist under those circumstances." *Shair–A–Plane v. Harrison,* 291 Minn. 500, 503, 189 N.W.2d 25, 27–28 (1971) (citing Restatement (Second) of Agency §§ 438, 440(a) (1958)). In *Shair–A–Plane,* the court applied this rule to hold that the county had no duty to indemnify a party who had been assigned an agent's rights for losses resulting from that agent's negligence. *Id.* at 503, 189

ance company. 624 N.W.2d at 161, 163–64. The court reasoned that because the agent's liability is based on his tortious conduct—not his status as an agent—"the agent may remain personally liable in tort to the insured for failing to procure the insurance." *Id.* at 161. This is so "even when an insured has settled with and released the insurer to payment of less than would have resulted if the sought-after insurance had been provided." *Id.* Because the settlement with the insurer was for less money than the plaintiff would have received if the sought-after insurance had been provided, the plaintiff's claim was not fully satisfied, and the insurance agent was liable for the difference between the settlement money and the maximum of the sought-after insurance. *Id.* at 163–64.

Since the parties agree that none of the Graff American Family settlement money represented payment of the disputed $1,000,000 UIM coverage in the umbrella policy (the sought-after insurance), we are not faced with the situation where the insurance company pays a portion of the sought-after insurance coverage in a settlement and we do not address that situation.

N.W.2d at 28. Here, as in *Shair–A–Plane,* the losses Swendra faces are due to his own negligence. Absent an agreement or other special circumstances, American Family has no obligation to indemnify Swendra against losses caused by his negligence.

Swendra does not point to an agreement entitling him to indemnity from American Family. Swendra and American Family's relationship is governed by an agency agreement that is in the record. The agreement does not provide that American Family will indemnify Swendra for Swendra's negligent acts that occur within the scope of Swendra's agency relationship with American Family. Similarly, the release between American Family and Graff does not provide that American Family will indemnify Swendra. The release only provides that Graff will indemnify American Family.

Swendra attempts to establish an indemnity duty to him based on his argument

The fact that none of the settlement money here represented payment of the sought-after insurance also avoids a need to address the possible conflict between *Paull v. Columbian Nat'l Fire Ins. Co.,* 171 Minn. 118, 213 N.W. 539 (1927), and *Twaiten v. Tanke,* 466 N.W.2d 31 (Minn.App.1991), *review denied* (Minn. Apr. 29, 1991). The issue in both cases was the same: if the insured fails to bring a claim under the policy against the insurer before his right to do so expires, is the insured precluded from bringing an action against the agent. *Compare Paull,* 171 Minn. at 119–21, 213 N.W. at 540–41, *with Twaiten,* 466 N.W.2d at 33. *Paull* held that the insured was precluded, reasoning that the agent could not be personally liable if he bound coverage, as he did in *Paull.* 213 N.W. at 541. *Twaiten* held that the insured was not precluded, reasoning that the negligence action against the agent was not an action on the insurance policy. 466 N.W.2d at 35. However, we note that the records in the cases disclose that the *Paull* plaintiffs alleged only a breach-of-contract cause of action whereas the *Twaiten* plaintiff alleged only a negligence cause of action.

that American Family is contractually liable to Graff for insurance coverage under the umbrella policy. Swendra argues that because caselaw establishes that an insurer is not entitled to indemnity from an agent when the agent binds the insurer to provide coverage, it follows that the agent is entitled to indemnity from the insurer as the principal. Swendra cites no authority for this position.[6] Moreover, since Graff's negligence action against Swendra as an agent is distinct from an action on the policy and is based on Swendra's own conduct, it does not follow that a principal would have to indemnify Swendra as an agent.

In sum, because Swendra is not entitled to indemnity from American Family, there is no circularity defense.

## II. Workers' Compensation Settlements as Collateral–Source Offsets

Graff's appeal raises the issue of whether the district court improperly calculated and deducted from the jury's negligence award the lump-sum workers' compensation settlements as collateral sources. The issues the parties raise regarding collateral sources involve the proper construction of the collateral-source statute, Minn.Stat. § 548.251. "Statutory construction is a question of law, which this court reviews de novo." *In re Kleven*, 736 N.W.2d 707, 709 (Minn.App.2007). "When reviewing mixed questions of law and fact, 'we will correct erroneous applications of law, but accord the [district] court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion stan-

dard.' " *Langford Tool & Drill Co. v. Phenix Biocomposites, LLC,* 668 N.W.2d 438, 442 (Minn.App.2003) (quoting *Rehn v. Fischley,* 557 N.W.2d 328, 333 (Minn. 1997)).

■ Minnesota law allows a party who has been found liable for injury or disability to seek a reduction in the jury award for compensation that the plaintiff has already obtained from collateral sources. Minn.Stat. § 548.251, subd. 1(2). The statute defines "collateral sources," in pertinent part, as payments to the plaintiff on or before the verdict from "federal, state ... or Workers' Compensation Acts." *Id.* If the court finds that the injured party has received payment from collateral sources or that such sources are available to the injured party, it must reduce the jury award by the collateral source amount. *Id.,* subd. 3(a). The purpose of the statute is to prevent double recovery by the plaintiff. *Heine v. Simon,* 702 N.W.2d 752, 764 (Minn.2005); *W. Nat'l Mut. Ins. Co. v. Casper,* 549 N.W.2d 914, 918 (Minn.1996). Conversely, where payment does not duplicate what is included in the jury award, it should not be subtracted from the award under the collateral-source statute because doing so would not promote the policy against double recovery. *Heine,* 702 N.W.2d at 764.

### A. May 18 Settlement
#### 1. Jury Award

■ Graff argues that no portion of the May 18 settlement is a collateral source because this workers' compensation settle-

**6.** Two cases that Swendra cites for the general proposition that an agent is entitled to indemnification from the principal for the agent's authorized conduct are inapposite because neither involves agents who are liable due to their own negligence. *See Hill v. Okay Constr. Co.,* 312 Minn. 324, 331, 344–46, 252 N.W.2d 107, 113, 120–21 (1977) (noting that

the only party found negligent was the attorney Ranta, not the Hills, who received indemnity as the agents of Okay); *Art Goebel v. N. Suburban Agencies, Inc.,* 555 N.W.2d 549, 551 (Minn.App.1996) (noting that the agent's conduct was "undisputedly non-negligent"), *rev'd on other grounds,* 567 N.W.2d 511 (Minn. 1997).

ment, which provided permanent-partial disability benefits based on his life expectancy, does not correspond to any of the damages awarded by the jury. The district court found that this settlement was effectively payment for future loss of earnings, which was included in the jury award, and thus considered them a collateral source.

Neither the May 18 disability settlement nor the jury award specifically refer to Graff's lost wages. Both reference disability. We note that the jury awarded him $186,000 for "future pain, *disability,* and emotional distress." (Emphasis added.) The district court had instructed the jury that "future damages for bodily and mental harm include ... disability ... [that] Curtis Graff is reasonably certain to experience in the future.... You should consider ... the type, extent, and severity of these injuries." Thus, we conclude that the permanent-partial disability benefits from the May 18 settlement correspond to disability damages awarded by the jury and are properly deducted from the jury award as a collateral source.

### 2. Subrogation

 Graff argues that the workers' compensation settlement should not be considered a collateral source because of the risk of subrogation. The statute does preclude deducting from a jury award collateral sources "for which a subrogation right *has been asserted.*" Minn.Stat. § 548.251, subd. 2(1) (emphasis added); *accord* Minn.Stat. § 548.251, subd. 3. Graff argues that because of his negligence recovery against Swendra, the workers' compensation carrier has a subrogation right against him for the benefits it paid. *See* Minn.Stat. § 176.061, subd. 5(b). There was no mention of this subrogation right at

the collateral-source hearing, in Graff's memorandum to the district court on collateral sources, or in the May 18 or December 13 workers' compensation settlement. The first time Graff mentioned these subrogation rights was in his appellate brief. This does not constitute an assertion of subrogation rights for purposes of the collateral-source statute and distinguishes Graff's claim from cases finding that subrogation rights have been asserted. *See Kahnke v. Green,* 695 N.W.2d 148, 151–52 (Minn.App.2005) (finding that subrogation rights were asserted in a timely fashion when the plaintiff raised the subrogation rights at the collateral-source hearing); *Buck v. Schneider,* 413 N.W.2d 569, 571 (Minn.App.1987) (finding that the plaintiff asserted subrogation rights "by stating, in response to the court's order requiring the parties to submit evidence of collateral sources, and in responses to discovery requests, that he had been assigned those rights"). Moreover, appellate courts will not consider matters not argued to and considered by the district court. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988). Thus, we conclude that Graff's attempt to invoke the subrogation-rights exception fails and the district court properly subtracted the May 18 workers' compensation settlement from the jury award as a collateral source.[7]

### B. December 13 Settlement

 The December 13 settlement recited that it released, among other things, Graff's claims for temporary-total, temporary-partial, permanent-total, and/or permanent-partial disability benefits, medical expenses, "or any other monetary benefits cognizable by the Minnesota Workers' Compensation Act." The district court not-

---

7. We acknowledge that Swendra challenges the very application of subrogation to claims based on UIM claims. Because we do not reach the merits of Graff's subrogation argument, we similarly do not reach Swendra's defense.

ed that this settlement compensated Graff for future losses. It then reasoned that because the jury award also compensated Graff for future losses, the amount of the December 13 settlement needed to be subtracted from the jury award as a collateral source to avoid a double recovery. Graff contests this decision on appeal.

Graff argues that the December 13 settlement is not a proper collateral source for several reasons. First, he argues that there was no specific finding of double recovery by the district court. This argument disregards the district court's express finding of double recovery. He next argues that a portion of the settlement compensated Graff for additional permanent-partial disability and medical expenses, both of which were not included in the jury award. This argument is unpersuasive. Permanent-partial disability benefits are included within the jury award for future and past disability. Thus, these benefits are a collateral source and were properly subtracted. Although the December 13 settlement agreement includes broad language releasing claims for "medical expenses," other portions of the settlement make it clear that the settlement provided no money for medical expenses.[8] Moreover, the workers' compensation settlement agreement states that Graff's injury was to his back, and the release language states that "future medical regarding [Graff's] back remain open."

■■■ Graff asserts four other bases for objecting to the collateral-source classification of the December 13 settlement: (1) claims for wage loss under negligence and under workers' compensation are different

and, thus, there is no double recovery; (2) the December 13 settlement did not duplicate the jury award for future pain, suffering, or mental or bodily harm; (3) the settlement money compensating him for future losses does not fit within the statutory definition of collateral sources; and (4) the proceeds from the workers' compensation settlements should not be subtracted as collateral sources because of the subrogation exception.[9] Because none of these bases were argued to and considered by the district court, we do not consider them. *Thiele*, 425 N.W.2d at 582.

In sum, we conclude the district court properly calculated the collateral-source impact of the workers' compensation settlements.

## III. Attorney Fees Offset To Collateral Sources

■■■ The last issue is whether the district court erred in reducing the collateral-source recovery by the attorney fees incurred to secure that recovery. Before subtracting the May 18 and December 13 workers' compensation settlements from the jury award as collateral sources, the district court subtracted the attorney fees incurred in securing these settlements. Swendra argues that this offset was improper under the collateral-source statute. The standard of review on this issue is identical to the standard of review used in considering the previous collateral-source issue.

The purpose of the collateral-source statute is to prevent double recovery. *Heine*, 702 N.W.2d at 764; *Imlay v. City of Lake Crystal*, 453 N.W.2d 326, 335

---

8. We note that the settlement-agreement recital of the benefits Graff claims is much narrower than the general release language. This implies that the release language was worded broadly out of caution, not because

all the claims listed in the release language had actually been asserted by Graff.

9. The previous analysis about the subrogation exception applies with equal force here.

(Minn.1990). Since a law providing that jury awards should be reduced by collateral sources "is in derogation of the common law, [it] must be strictly construed." 22 Am. Jur. 2d *Damages* § 393 (2009). The statute addresses situations involving a double recovery. The statute does not apply to reduce jury awards when there was no double recovery because that would be an absurd result: "We do not believe the legislature would pass a statute that primarily is aimed at eliminating double recoveries, but then have it applied to reduce awards where there is no possibility of a double recovery." *Imlay*, 453 N.W.2d at 335 (citing Minn.Stat. § 645.17(1) (1988) (instructing courts to presume that the legislature does not intend an absurd result)).

Reducing the collateral-source amount by the attorney fees incurred in securing the workers' compensation settlements does not result in a double recovery for Graff. The attorney fees went to the attorneys, not Graff. The fees were an expense that secured the collateral-source benefit. Applying the collateral-source statute to this money would not serve the purpose of avoiding a double recovery. Thus, the district court properly removed the attorney fees from the workers' compensation settlement amounts before subtracting the settlements from the jury award as collateral sources.[10]

10. We note that the collateral-source statute specifically allows an offset for certain payments made within two years of the date of the injury or other event giving rise to a claim. Minn. Stat. § 548.251, subd. 2(2). This was apparently done to allow recovery of insurance premiums paid by the injured party to obtain coverage that provided benefits that became a collateral source. We conclude this language does not prohibit other offsets. Otherwise, a provision that was intended to expand recovery by injured parties would ironi-

## DECISION

We affirm the district court's decision that Swendra was liable for negligence. We also affirm the district court's decision that the May 18 and December 13 settlements are collateral-source benefits that should be subtracted from the jury award, and its decision to reduce the collateral source by the corresponding attorney fees.

**Affirmed.**

cally penalize them by forcing them to absorb expenses incurred to secure collateral-source benefits.

Although district courts have undoubtedly decided the other way, we note that this result is consistent with district court practice referenced in a reported decision of this court. *See Buck*, 413 N.W.2d at 570 (noting that the trial court subtracted $2,600 in attorney fees that the injured party paid to secure collateral sources).